HOME INDEMNITY COMPANY, a corporation of the State of New York, Plaintiff,

v.

Harry T. WARE et al., Defendants.

Civ. A. No. 2120.

United States District Court
D. Delaware.

May 3, 1960.

F. Alton Tybout, of Prickett & Prickett, Wilmington, Del., for plaintiff.

William F. Taylor and H. James Conaway, Jr., of Morford, Young & Conaway, Wilmington, Del., for defendants.

LAYTON, District Judge.

Frederick White is the son of H. Newton White, Esquire, a Wilmington attorney, and Thelma White Ware, who had divorced Mr. White and married Harry T. Ware. In July, 1958, Fred was living with his mother and stepfather at the latter's home. At the time of these happenings, Fred had been 16 years old for only two weeks. His stepfather had recently refused to permit him to obtain a driver's license. On the night of July 15, 1958, Fred, having no operator's license, stole the car of a neighbor and became involved in a collision in which his two companions, the Cesarini boys, were injured. Cesarini, Sr., was insured

with Home and Reliance. He notified Home in order to take advantage of the "medical payment" feature of the policy. Home made these payments promptly and closed its file in ignorance of the fact that Ware was also insured by it. Ware, also by coincidence insured by Home, did not then notify Home of the accident. Reliance was much slower in making payments under the "medical payment" clause of its policy. It was in October, while Reliance was still investigating the accident, that its agent, in talking to Mrs. Ware, suggested that the Wares might be covered by their Home policy. Mr. Ware, who had never imagined that his policy might cover Fred, then inquired of his agent, found that Fred was covered and promptly notified Home. Home subsequently disclaimed liability under Condition 3 of the policy which provided for notice of an accident "as soon as practicable".

Fred White has now been sued in the Superior Court of this State. In order to ascertain whether it must defend, Home has filed an action for a declaratory judgment in this Court advancing, among other reasons, Ware's failure to give notice within the provisions of Condition 3 of the policy.

■ An examination of a number of decisions dealing with the notice provisions in insurance policies reveals that a requirement to give notice as soon as practicable means within a reasonable time under the circumstances. London Guarantee & Accident Co. v. Shafer, D.C.Ohio, 35 F.Supp. 647; Miller v. Zurich General Accident & Liability Ins. Co., 36 N.J.Super. 288, 115 A.2d 597; Wilmington Amusement Co. v. Pacific Fire Ins. Co., 2 Terry, Del., 294, 21 A.2d 194; [1] American Employers Insurance Company v. Sterling, 101 N.H. 434, 146 A.2d 265; Appleman, Insurance Law and Practice, Vol. 8, Sec. 4734. Mere time lapse is not the determining factor. Miller v. Zurich General Accident and Liability Ins. Co., supra.

---

1. The Wilmington Amusement Co. case simply follows the general rule. Contrary to the plaintiff's argument, it is not otherwise helpful to it. Aside from this case, there are no Delaware authorities dealing with the point involved.

■ Was the delay of 85 days on Mr. Ware's part in notifying Home of this accident such as to justify the Company in denying liability thereunder? In determining this question we should examine the facts and circumstances not through the eyes of a trained insurance adjuster, agent, or a lawyer but from the point of view of Harry T. Ware, citizen.

Home insists that, in these circumstances, any reasonable man would have either examined the policy [2] which he had in his own possession or asked his agent for advice. A portion of this argument is not without merit. Some people undoubtedly would have called their agent. However, to contend that Mr. Ware should have personally examined and construed the rather complicated provisions of this policy against the unusual circumstances of this case and made his own determination as to coverage goes too far.

■ Mr. Ware testified that he did not notify Home for the simple reason that it never occurred to him. The fact is it never occurred to Mr. White, Fred's father and a lawyer, who was on friendly terms with his former wife's new husband. Now the fact that these two did not think of possible coverage is not determinative of the case. But that Mr. White, a lawyer and extremely interested in his son's welfare, did not think of it

is not without significance. Moreover, now that these facts have been called to Home's attention, it is significant that it has rewritten the policy so that it would not again be liable under similar circumstances. We are thus permitted the inference that it had never even occurred to the Company itself that the terms of its policy were so broad as to include such uncommon facts.

I accept without hesitation Mr. Ware's testimony that it just never occurred to him that his stepson might be covered. And why would it? The boy had no license. The car was not the family car but the car of a neighbor. On top of that, it was stolen. The mind of the average man would, I believe, reject the thought that the unlicensed stealer of a car involved in a collision could possibly hope to be protected by insurance. Add to this the fact that no suit against Fred was pending through the 85 day period (nor had suit been threatened) and there are convincing reasons for the ordinary reasonable person's failing to give much thought to the possibility of coverage.

■■ Under the same or somewhat similar circumstances, Courts have held that substantial delays in giving notice to the insurer were excusable.[3] For example, in London Guarantee & Accident Co. v. Shafer, supra, a delay of over four months was excused when the insured

---

2. The plaintiff emphasizes the fact that because the policy is entitled "Family Combination Automobile Policy", Ware should have realized that coverage was possible. But in 1959, the policy was changed to eliminate coverage under these facts and yet the policy still retains its same title.

3. The question of prejudice to the insurer is discussed in many cases dealing with the notice requirement. There is, however, a logical inconsistency between the propositions that (1) an insurer may be prejudiced by the passage of time after an accident before notice is given, and may thereupon deny liability, and (2) an insured may be reasonable in allowing such a passage of time to occur. Since the insurance contracts themselves, in requiring notice "as soon as practicable", establish the reasonableness of

the insured's action as the controlling determinative of whether the insurer may be held liable, the soundest resolution of the inconsistency is to eliminate any question of prejudice to the insurer from the initial determination of the reasonableness of the notice. Since I find that the notice in this case was given as soon as practicable, it is unnecessary to consider prejudice although it may be noted that the plaintiff's argument that the insurer was thereby prejudiced because (1) it lost the opportunity to make an early settlement and (2) it lost the opportunity to make an immediate search for all available witnesses is, at best, speculative. The parties and occupants of the cars are living. The scene of the accident is unchanged. Police reports of the investigation of the accident are available.

knew there was a policy but did not think it covered the accident. In Farm Bureau Mutual Automobile Ins. Co. v. Manson, 94 N.H. 389, 54 A.2d 580, a delay of over two months was excused where an insured believed a different party than himself was responsible for the accident. In Silver v. Indemnity Ins. Co. of North America, 137 Conn. 525, 79 A.2d 355, a delay of six months was excused where the owner of a store saw an elderly lady take a fall and be carried from his store to her car in a chair but did not believe she was seriously hurt. In Leytem v. Fireman's Fund Indemnity Co., 249 Iowa 524, 85 N.W.2d 921, a delay of over one year was excused when the employer (insured) thought that the accident was not his responsibility; and in Reid v. Monticello, La.App., 44 So.2d 509, a delay of seven months was excused where the insured forgot he had taken out a policy of insurance covering the accident.[4]

An examination of all the facts and a number of authorities convinces me that, while this is a very close case, it is clear that not only was Ware completely free of fraud or improper motive, but that failure to consider that his policy would cover Fred under the unusual facts was not unreasonable and, therefore, giving notice when possible coverage was first suggested to him satisfied the notice requirement of the policy. To find otherwise would be almost tantamount to asserting the proposition that under any circumstances if anyone in an insured's household were involved in an automobile accident, the insured must inquire whether his insurance afforded coverage. Clearly, insurance law has not gone this far. Compare, for example, the so-called trivial injury rule, whereby an insured is excused from failure to give immediate notice of an accident where he believed any injury therefrom to be trivial. Lennon v. American Farmers Mutual Insurance Co., 208 Md. 424, 118 A.2d 500 and cases cited at page 503. Certainly Ware was no more negligent in not considering possible coverage under his policy than the insured who forgot he had taken out a policy covering the accident (Reid v. Monticello) or the insured who watched his elderly customer fall and be carried to the car in a chair but believed it was a trivial injury (Silver v. Indemnity Ins. Co. of North America).

Assuming, arguendo, that the burden of proof here rests upon Ware, I find that, under the facts of this case, he gave notice of the accident as soon as was practicable.

Let plaintiff's prayer for a declaratory judgment be denied.

---

4. Concededly, cases may be found adopting a stricter view than those cited.