**HOME INDEMNITY COMPANY, a Corporation of the State of New York, Appellant,**

v.

**Harry T. WARE, Frederick M. White, a Minor Also Referred to Sometimes as Frederick White, Charles Cesarini, a Minor, Anthony Cesarini, Jr., a Minor and Anthony Cesarini.**

No. 13323.

United States Court of Appeals Third Circuit.

Argued Oct. 21, 1960.

Decided Dec. 28, 1960.

F. Alton Tybout, Wilmington, Del. (Prickett & Prickett, Wilmington, Del., on the brief), for appellant.

H. James Conaway, Jr., Wilmington, Del. (William F. Taylor, Wilmington, Del., on the brief), for Charles Cesarini, Anthony Cesarini, Jr., and Anthony Cesarini, appellees.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

In controversy here is the interpretation of a clause in an automobile liability

insurance policy which requires as a condition of the insurer's liability that it be given notice of any accident "as soon as practicable". The insurer, Home Indemnity Co., sued for a declaratory judgment of non-liability on the ground that notice of the accident in question was not given soon enough to satisfy the notice requirement of the policy. The district court denied the requested relief, 183 F.Supp. 367, and the insurer has appealed.

The policy in suit was issued to Harry Ware. The accident occurred on July 15, 1958, when Frederick White, the 16 year old stepson of Ware, was driving, without a license, a neighbor's car which he had stolen. The persons injured in the accident were teen-aged friends of the stepson who were his passengers on the joyride. Several months elapsed before any claim was asserted against young White by or on behalf of the injured boys. On October 10, 1958, the insurer was first notified of the accident. This was nearly three months after the event but before any demand had been made upon young White.

Ware's policy, encaptioned "Family Combination Automobile Policy", covered as the "named insured" both Ware and his wife. In the case of a "non-owned automobile", coverage extended to "any relative, but only with respect to a private passenger automobile or trailer not regularly furnished for the use of such relatives". A "relative" was defined as any "relative of the named insured who is a resident of the same household". The policy required that notice of any accident be given to the insurer "as soon as practicable".

The evidence shows that it did not occur to Ware that the circumstances of this accident might be covered by his policy until an investigator for another insurance company, against which the injured boys had made a claim under their own policy, learned on inquiry that Ware also was insured and suggested that notice be given to Ware's insurer.

The policy in suit was a contract made in Delaware and the Wares live in that state. The parties properly concede that Delaware law controls the interpretation of this insurance contract.

Interpreting the policy, the court below ruled that a "requirement to give notice as soon as practicable means within a reasonable time under the circumstances." The court then examined the facts and concluded that in all the circumstances notice was not unreasonably delayed. The court summarized its analysis of the evidence and its conclusion as to reasonableness in this way:

"I accept without hesitation Mr. Ware's testimony that it just never occurred to him that his stepson might be covered. And why would it? The boy had no license. The car was not the family car but the car of a neighbor. On top of that, it was stolen. The mind of the average man would, I believe, reject the thought that the unlicensed stealer of a car involved in a collision could possibly hope to be protected by insurance. Add to this the fact that no suit against Fred was pending through the 85 day period (nor had suit been threatened) and there are convincing reasons for the ordinary reasonable person's failing to give much thought to the possibility of coverage." [183 F.Supp. 369.]

We have found no authoritative Delaware ruling, and the parties and the court below have cited none, on the legal interpretation of a requirement of "notice as soon as practicable" in an insurance contract. There is a passing comment on the problem in Wilmington Amusement Co. v. Pacific Fire Ins. Co., 1941, 41 Del. 294, 297, 21 A.2d 194, 195, but we do not find it helpful. It is arguable that the standard of practicability, as stated in such notice of loss provisions, is not "as broad or flexible as the term frequently found either in contracts or the law generally fixing the standard of time as 'reasonable' ". See Brown, Circuit Judge, dissenting in Navigazione Alta Italia v. Columbia Cas. Co., 5 Cir., 1958, 256 F.2d 26, 31; cf. Unverzagt v. Prestera, 1940, 339 Pa. 141, 144, 13 A.2d

46, 47. But in the great majority of the cases the courts have construed notice provisions of the type here in suit as requiring no more than that notice be given within a reasonable time in view of all facts and circumstances of the given case. Young v. Travelers Ins. Co., 5 Cir., 1941, 119 F.2d 877; Williams v. Cass-Crow Wing Co-op. Ass'n, 1947, 224 Minn. 275, 28 N.W.2d 646; Miller v. Zurich General Accident and Liability Ins. Co., 1955, 36 N.J.Super. 288, 115 A.2d 597; 18 A.L.R. 2d 443, 462. We find no reason to believe that the Delaware courts would hold otherwise. Accordingly, we approve the district court's adoption of the generally accepted rule as Delaware law.

In applying this general test of reasonable behavior courts have sometimes imposed a limiting rule that failure to advert to relevant terms of a policy which plainly extend coverage to the occurrence in suit is, as a matter of law, unreasonable and cannot excuse delay in giving notice. Zurich General Accident & Liability Ins. Co. v. Harbil Restaurant Inc., 1959, 7 A.D.2d 433, 184 N.Y.S.2d 51; Acosta v. Roach, Sup.Ct.1958, 12 Misc.2d 494, 172 N.Y.S.2d 116; State Farm Mut. Auto Ins. Co. v. Cassinelli, 1950, 67 Nev. 227, 216 P.2d 606, 18 A.L.R.2d 431. Invoking this rule appellant contends that this is a case where coverage is plain on the face of the policy.

■ The relevant provision of the present policy states that "with respect to a non-owned automobile" the policy covers "any relative [of the named insured], but only with respect to a private passenger automobile or trailer not regularly furnished for the use of such relatives". We think this language falls far short of making it obvious to the ordinary reader that a relative of the named insured is covered while driving a stolen automobile.

This uncertainty was strikingly demonstrated only a few months ago when the Court of Appeals of New York had to decide this very question of interpretation with reference to identical language in an insurance policy. The judges of that able and distinguished court divided four to three, the majority holding that a relative driving a stolen car was covered. Sperling v. Great American Indemnity Co., 1960, 7 N.Y.2d 442, 199 N.Y.S.2d 465, 166 N.E.2d 482. However, in a carefully reasoned opinion, the dissenters derived a contrary meaning from the language of the policy. In their view the expression "not regularly furnished" for the use of a relative means "occasionally furnished" for his use, and no more than that. Under this analysis a stolen car, which is not "furnished" at all, is excluded entirely from the coverage of the policy.

We need not decide whether the more persuasive argument is made by the majority or the minority in the Sperling case. It is enough that both make sense and thus demonstrate that it is not obvious even to a group of seven experienced judges after deliberation that the clause in question covers stolen cars.

When the person reading the insurance policy is a layman the possibility of coverage of a stolen automobile is even more obscure. As the court below pointed out, the law-abiding householder who seeks to insure his family from liability which may be incurred through the driving of an automobile is not likely even to think of the possibility that he or some member of his household may steal a car. He does not associate such conduct with the contemplated behavior of his own family. In addition, the policy he obtains makes no mention of stolen cars. Thus, when he sees that his policy does cover a relative driving a car "not regularly furnished" for his use, neither his thinking about the risks which he was seeking to insure nor his reading of the language of his policy is calculated to alert him to possible coverage of the stolen automobile situation. Cf. London Guarantee & Accident Co. v. Shafer, D. C.S.D.Ohio 1940, 35 F.Supp. 647; Greaves v. Public Service Mut. Ins. Co., 1957, 4 A.D.2d 609, 168 N.Y.S.2d 107, affirmed 1959, 5 N.Y.2d 120, 181 N.Y.S. 2d 489, 155 N.E.2d 390. But cf. Allstate Ins. Co. v. Hoffman, 1959, 21 Ill.App.2d. 314, 158 N.E.2d 428.

This analysis causes us to conclude that it is at least doubtful whether a reasonable layman in the position of the person insured would have been alerted to the possibility that his policy might cover his stepson's accident and would have given notice accordingly. We cannot say that the court below was wrong in resolving this doubt in favor of the insured.

Finally, it is argued that the insured cannot rely upon misunderstanding the policy because admittedly he did not re-examine it after the accident. However, if, as we believe, all of the circumstances were not such as to alert a layman to the likelihood of coverage, he should not be penalized for failure to do what reasonably seemed pointless and, if done, would probably still have seemed so.

The judgment will be affirmed.

KALODNER, Circuit Judge (dissenting).

I would reverse for the reason that there was here a clear failure by the insured to comply with the terms of the policy that notice should be given of an accident "as soon as practicable". Notice was not given for 87 days after the accident happened. The reason assigned by the insured was that it did not occur to him that the policy covered the accident. He did not read his policy in an effort to ascertain whether it afforded coverage. As stated by the majority it was only by reason of the fortuitous circumstance that someone suggested that the policy extended coverage that he gave notice 87 days after the accident.

I agree with the majority's view that the Delaware courts would subscribe to the general rule interpreting the "as soon as practicable" notice provision in the instant policy as requiring reasonable behavior on the part of the insured in reporting an accident.

I do not believe that the Delaware courts would hold that it is reasonable behavior on the part of an insured to assume without even reading his policy that it does not afford coverage and for that reason fail to give notice of an accident until 87 days after its occurrence.

The circumstances that the terms of the policy may not have made it "obvious to the ordinary reader", as the majority puts it, that it afforded coverage, is entirely irrelevant in the posture of the facts which prevailed in the instant case. Here the insured chose not to read his policy and further chose to conclude without reading it that it did not afford coverage. His conduct falls far short of the requirement of "reasonable behavior" and his insurance company can invoke his non-compliance with the terms of the policy as a defense to its liability under it.

I believe that the Delaware courts would hold an insured to the minimum requirement that he read his policy in an effort to ascertain the scope of its coverage in assessing "reasonable behavior" with respect to his failure to comply with its notice of accident provision.