Earl D. LILLY, Plaintiff,

v.

The OHIO CASUALTY INSURANCE COMPANY, a corporation of the State of Ohio, Defendant.

Civ. A. No. 2670.

United States District Court
D. Delaware.

Oct. 5, 1964.

Defendant disclaims any duty or liability on its part or any policy coverage with respect to the accident. This disclaimer is based on defendant's assertion that Lilly failed to give due and timely notice of the accident as required in the policy. Defendant further alleges that Lilly's failure to give notice was wilful.

The insurance contract between Lilly and Ohio provides: [1]

"3. Notice. In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. In the event of theft the insured shall also promptly notify the police. If claim is made or suit is brought against the insured, he shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

\* \* \* \* \* \*

"6. Action Against Company— Part 1. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligations to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

Joseph A. Rosenthal, of Cohen, Morris & Rosenthal, Wilmington, Del., for plaintiff.

Albert L. Simon, Wilmington, Del., for defendant.

CALEB M. WRIGHT, Chief Judge.

In this action plaintiff, Earl D. Lilly, seeks a declaratory judgment that his automobile liability insurance policy issued by defendant, The Ohio Casualty Insurance Company (Ohio), is in full force and effect and that, pursuant to the terms of that policy, Ohio must investigate an accident involving Lilly and Joseph A. Mangini and defend a suit brought in the Superior Court for New Castle County by Mangini arising from the accident.

A hearing was held in this case on April 6 and 8, 1964. It was stipulated that the parties would file briefs after the trial. The last brief, plaintiff's reply brief, was filed June 22, 1964.

The trial record is rife with evasive responses, contradictory testimony, evi-

1. PX–1.

dence of faulty memories, and implications of unethical conduct. Fortunately, in their briefs, the parties have been able to achieve some agreement as to the facts.

Plaintiff says that analysis of the opposing statements of facts reveals only one basic factual dispute—"whether or not Lilly knew or had reason to believe that Mangini would assert a claim for personal injuries allegedly sustained in the accident in question."[2] Plaintiff maintains that Lilly did not know of any personal injuries until contacted by Mangini's lawyer some six weeks after the accident.

■ This fact is of pivotal significance because the reasonableness of the time within which Lilly notified Ohio in compliance with the policy requirements is measured from the time that Lilly became aware of Mangini's injury or claim of injury.

Of course, the facts bearing on this one question cannot be considered in vacuo. It is necessary to rehearse much of what was elicited at trial in order to reach a conclusion.

On May 22, 1961 Ohio issued Family Automobile Policy FA 3779823 to Lilly.[3] Only a few days later, on May 26, Lilly's brakes failed as he was driving south on Van Buren Street in Wilmington. Lilly's car, a 1954 Oldsmobile, struck Mangini's car, a 1950 Chevrolet, in the rear. The force of the collision drove the Chevrolet into a third vehicle operated by William H. Benson.[4] It appeared that none of the occupants of the vehicles was injured. Mangini told the police who investigated the accident that he was all right.[5] There was, however, extensive property damage. Mangini's car suffered damage amounting to $294.50.[6] Lilly's car had to be towed from the scene of the accident.[7]

For seven weeks Lilly did not report the accident to Ohio or its agents.[8] He did report the accident to the broker who had placed his insurance with Ohio, but he instructed the broker not to report the accident to Ohio.[9] Lilly explains that he thought that he could take care of the repairs himself, and he did not want to lose the insurance he had so recently obtained.[10] He further maintains that he was not aware of any claim of personal injuries to Mangini until he heard from Mangini's attorney on July 6 or 7.[11]

Mangini testified that he felt a snap in his back at the moment of impact.[12] Several hours after the accident he began to feel pain. That evening he went to the doctor and the doctor taped his lower back.[13]

Mangini saw Lilly at a hearing in Municipal Court on the Monday following the accident. His back was still taped and he felt pain.[14] He spoke to Lilly at that time, but he does not remember whether he told Lilly that his back hurt.[15] Lilly maintains that Mangini did not mention his injuries.[16] However, Daniel Ferry, who interviewed Mangini before trial at the behest of Ohio's counsel, testified that Mangini claimed he told

---

2. Plaintiff's Reply Brief, p. 1.

3. PX-1.

4. DX-1.

5. N.T. 6–7.

6. DX-2.

7. N.T. 21.

8. Plaintiff concedes that he has not sustained the burden of proving that Mettler, Mangini's insurance agent, notified Ohio of the accident in June, 1961. See Plaintiff's Post-trial Brief, p. 13. Therefore, whether or not notice from Mettler

without some notice or corroboration from Lilly would be adequate to bind Ohio, need not be decided.

9. N.T. 20, 154, 171.

10. N.T. 20.

11. N.T. 11.

12. N.T. 48.

13. N.T. 49, 59.

14. N.T. 59.

15. N.T. 51.

16. N.T. 24, 25.

Lilly of his back injury at the Municipal Court hearing and in subsequent telephone conversations.[17] Mangini did not remember talking to Ferry about his back, although this interview relative to the suit between Lilly and Ohio, a controversy in which Mangini had more than a passing interest, took place only four days before the trial.[18] Mangini did remember speaking to Lilly on the telephone several times after the accident. He did not remember, however, whether he had mentioned his injured back in any of these conversations.[19] Rinaldo Spitelle, Lilly's brother-in-law, with whom Lilly was living at the time of the accident, testified that he spoke with Mangini about two weeks after the accident and that Mangini said, "if I don't get $125 I am going to claim injury. I got a doctor that will get that fixed up with." [20]

On July 6 or 7, Lilly received a letter from Oliver Suddard, Mangini's attorney, advising Lilly that Suddard represented Mangini in his claim for personal injuries arising out of the May 26 accident.[21] Lilly still did not want Ohio to know about the accident.[22]

On July 13, Lilly received a letter from the Motor Vehicle Department of Delaware requesting that he file an SR–21 form relating to financial responsibility.[23] At that point, Spitelle called Smith and Werner, agents for defendant, and reported the accident of May 26. The next day Lilly called Smith and Werner and requested that they file the required SR–21 form.[24] Thus, defendant finally received notice of the accident some seven weeks after it occurred.

On August 10, 1961 Ohio informed Lilly that it would not file the requested form and that it disclaimed coverage of the May 26 accident under Lilly's policy because of his failure to give notice in compliance with the terms of the policy.[25] Lilly brought this action against Ohio on May 10, 1963.

## The Merits

The insurance contract between Lilly and Ohio requires that notice of an accident be given "as soon as practicable." By its own terms, then, the policy calls for notice as soon as notice may reasonably be given under the circumstances. Home Indemnity Company v. Ware, 183 F.Supp. 367 (Del.1960) aff'd. 285 F.2d 852; Hughey v. Aetna Casualty & Surety Company, 30 F.R.D. 508 (Del.1962).[26] The reason for a provision requiring notice is to afford the insurance company an adequate opportunity to investigate, to prevent fraud and imposition on it, and to provide the company a chance to ascertain its rights and liabilities. Wilmington Amusement. Co. v. Pacific Fire Ins. Co., 41 Del. 294; 21 A.2d 194 (Del.Super.1941). It is well settled in Delaware that such provisions. are a condition precedent to an insurer's: obligation under an insurance policy.. Hughey v. Aetna Casualty & Surety Company, supra, citing Wilmington Amusement Co. v. Pacific Fire Ins. Co., supra.

Lilly argues that the "reasonableness" of his notice to Ohio should be measured from July 6 or 7, a matter of one week. He maintains that he did not know of Mangini's claim of injury until he received the letter from Mangini's attorney, Suddard. Because he did not know of injuries to Mangini before July 6 or 7 and because Mangini told him at the:

---

17. N.T. 53, 54, 55, 141–142.

18. N.T. 54.

19. N.T. 56–57.

20. N.T. 197, 198.

21. N.T. 11, 12; PX–2.

22. N.T. 28.

23. N.T. 28, 85–86.

24. N.T. 109; DX–3.

25. PX–3.

26. Even where an insurance policy requires *immediate* notice, the Delaware courts have applied a more lenient rule permitting notice within a reasonable time where conditions made immediate notice impossible. See Wilmington Amusement Co. v. Pacific Fire Ins. Co., 41 Del. 294; 21 A.2d 194 (Del.Super.1941).

scene of the accident that he was not harmed, Lilly claims that giving notice prior to receipt of Suddard's letter was excused by the trivial injury rule.

█ Briefly stated, the trivial injury doctrine announces that an insured is not under obligation to report every trivial mishap where there is no reasonable ground for believing at the time that bodily injury had occurred or would follow. See Anno. 18 A.L.R.2d 443, 475. This rule holds true although the occurrence may later prove to give rise to serious injury. Lennon v. American Farmers Mutual Insurance Company, 208 Md. 424, 118 A.2d 500 (Ct.App.Md.1955). Phoenix Indemnity Co. v. Anderson's Groves, Inc., 176 F.2d 246 (5 Cir. 1949); Burbank v. National Casualty Co., 43 Cal. App.2d 773, 111 P.2d 740 (1941).

Whether or not an injury is trivial is determined by applying the standard of the reasonable man:

" 'The true rule, it seems to us, must be declared to be that notice is an essential requirement in order to fix liability on the insurer when there has been such an occurrence or accident as would lead the ordinarily prudent and reasonable man to believe that it might give rise to a claim for damages.' * * * Whether or not the reasonably prudent person might have regarded the accident in question of such a trivial nature as to require the giving of no notice is not a question of law but one of fact over which the minds of reasonable men might differ. * * * " Phoenix Indemnity Co. v. Anderson's Groves, Inc., supra.

█ Lilly urges that the weight of authority favors the trivial injury doctrine and that the Delaware courts would apply this rule. Certainly the rule appears to be a salutary one. If the insurance company desires a stricter standard, it requires only a stroke of the pen to amend its contracts to require notice of every accident no matter how minor.[27] But the court cannot take the first step with Lilly and call this accident trivial. In this accident three cars were damaged. One car sustained damage in the amount of $294.50. Another had to be towed from the scene.

█ Lilly admits that, insofar as property is concerned the damage to automobiles involved in the May 26 accident was "far from trivial." [28] He points out, however, that the policy covers property damage and bodily injury liability in two distinct sections with separate premiums assigned to each coverage. Under these circumstances, he argues, the court should follow American Surety Company of New York v. Rosenthal, 206 Misc. 485, 133 N.Y.S.2d 870 (N.Y.Sup.Ct.1954) aff'd. 147 N.Y.S.2d 678. In that case the New York court held that property coverage and personal injury coverage were severable parts of the insurance policy under consideration. Although property damage was apparent in the case, the court held that failure of the insured to notify the company with regard to property damage did not affect the obligation of the company to defend the cause of action for personal injuries where there was no indication that personal injuries were also sustained in the collision.

This court cannot follow the Rosenthal decision. In considering the reasonableness of delay in giving notice, Judge Layton recently wrote, "In determining this question we should examine the facts and circumstances not through the eyes of a trained insurance adjuster, agent, or a lawyer, but from the point of view of [here, Earl D. Lilly], citizen." Home Indemnity Company v. Ware, supra 183 F.Supp. at 369. Bearing this charge in mind, the court cannot separate the concept of trivial injury into two categories: injury relating to property and injury relating to persons. In determining the reasonableness of delay in giving notice

27. For example see the insurance contract involved in Lesage v. Utilities Insurance Co., 131 F.2d 536 (5 Cir. 1942).

28. Plaintiff's Post-trial Brief, p. 7.

and, in turn, the reasonableness of Lilly's belief that there was no personal injury, the very fact that there was extensive property damage plays an important role. It would seem that the "ordinarily prudent and reasonable man" would believe that an accident in which he was involved might give rise to a claim for personal injuries where extensive property damage was apparent. The very fact of property damage in this case casts doubt on the reasonableness of Lilly's delay in advising Ohio of the May 26 accident.

Even if the court were to hold the property damage and personal liability sections of this insurance contract severable, it could not close its eyes to the significant interplay of damage to property and damage to persons in determining the key question here—the reasonableness of Lilly's delay in notifying Ohio as founded on the belief that no personal injuries or only trivial personal injuries were sustained. The court does not find a trivial injury here because of the substantial property damage. It declines to hold that the accident was trivial insofar as personal injury was concerned on the ground that Lilly, acting as a reasonable man, should have foreseen the possibility of a claim for personal injuries arising from an accident where there was extensive property damage. This is true whether or not the personal injuries sustained were in fact trivial.

The court is aware that it countenances a standard which is difficult to apply. It will not always be apparent that an accident involves property damage so "extensive" or "substantial" as to require notice of possible personal injury to the insurance company even though the insured plans to take care of the property damage himself and can perceive no personal injuries. Here, two further factors buttress the determination that Lilly's delay of seven weeks in notifying Ohio was not reasonable.

First, there are indications that Lilly knew or, at least, had reason to know of Mangini's injuries within a few weeks after the accident. Ferry testified that Mangini claimed he informed Lilly that his back hurt on the Monday after the accident. Mangini does not remember whether he spoke of this to Lilly. He also does not remember relating this fact to Ferry although Ferry interviewed him only a few days before trial. Lilly staunchly denies that Mangini informed him of any pain in his back. Still, it is uncontroverted that Mangini was in pain on the Monday following the accident when he saw Lilly at Municipal Court. He had already been to see a doctor. His back was taped up. Certainly it is not likely that he should fail to mention his injuries to the man who had caused them and to whom Mangini would look for recompense.

Even if Lilly did not hear of Mangini's injuries at this time, Spitelle testified that within two weeks after the accident, Mangini warned that he would claim personal injuries if Lilly did not pay him $125.[29] Surely, it is reasonable to infer that Spitelle, who was Lilly's brother-in-law and who lived in the same house with Lilly, would have relayed this communication to Lilly.

Second, Lilly admits that he intended to withhold notice from Ohio because he was afraid that he would lose his insurance. While this motive is not in itself reprehensible, it is not a legally cognizable excuse for failure to give notice. More important, it shows that Lilly's thoughts were concentrated on the possible loss of his insurance when he decided not to give notice rather than an overriding belief that no personal injuries had been sustained in the accident. It is significant to note that even after Lilly received Suddard's letter, he still did not advise Ohio of the accident until the Motor Vehicle Department requested that he file an SR–21 form.

Viewed from Lilly's position, applying the standard of the prudent man, the court finds that Lilly knew or should have

29. It should be noted that Spitelle testified that he spoke with Mangini on the telephone on other occasions and that Mangini did not mention his injuries prior to this demand. N.T. 197.

known that Mangini would claim personal injuries weeks before he received the Suddard letter.

One further matter must be considered. In his brief plaintiff argues that "It is unnecessary to decide the substantial question of law raised by the factor of prejudice."[30] Cogently, he points out that after July 6 or 7 all the purposes of the notice requirement—investigation, prevention of fraud, etc.,—would have been dissipated and the question of whether or not Ohio was prejudiced by Lilly's failure to give notice would be immaterial. This is persuasive if one takes July 6 or 7 as the date when Lilly first knew or should have known of Mangini's injuries. Since, however, the court has rejected this theory, it is necessary to comment on the question of prejudice which plaintiff indicates he would raise but for his stand as to when Lilly learned of injuries.

■ There is a split of authority as to whether or not prejudice to the insurer is material in determining the reasonableness of notice. Anno. 18 A.L.R.2d 443, 484; Home Indemnity Co. v. Ware, supra. Since Delaware construes such provisions as a condition precedent to liability of the insurer under insurance contracts, it seems that the Delaware courts would find the question of prejudice to be immaterial.[31] Whether or not this is the case, it could not well be argued that the insurance company was not prejudiced here. Indeed, Ohio maintains that there is evidence of fraudulent conduct on the part of both Lilly and Mangini.[32]

The court finds that Ohio was prejudiced by Lilly's delay in giving notice of the May 26 accident. This delay for a period of five to seven weeks was not reasonable in light of the various factors which should have made Lilly aware of a possible claim for personal injuries. If Lilly had, in fact, not learned of Mangini's injuries until July 6 or 7, notice to Ohio on July 13 or 14 would not be unreasonable. But Lilly should have known of a possible claim of injury at the time of the accident or, at the latest, within a week or two after May 26.

■ The burden of proving an excuse for failure to give notice as required in an insurance policy is on the insured. 8 Appleman, Insurance Law and Practice, § 4746. Lilly has not satisfied this court that his delay in giving notice of the May 26 accident until July 13 or 14 was reasonable. Ohio is justified in disclaiming liability for the accident. Judgment should accordingly be for defendant.

Submit order.

---

30. Plaintiff's Post-trial Brief, p. 12.

31. Plaintiff concedes this. See Plaintiff's Post-trial Brief, p. 12.

