IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| **MICHAEL VITO**, | : |
| | : C.A. No. S21C-08-006 CAK |
| **Plaintiff,** | : |
| | : |
| v. | : |
| | : |
| | : **TRIAL BY JURY OF** |
| **WATERSIDE PROPERTY** | : **TWELVE DEMANDED** |
| **OWNERS ASSOCIATION, INC.,** | : |
| **a Delaware Corporation, and** | : |
| **PHILADELPHIA INDEMNITY** | : |
| **INSURANCE COMPANY,** | : |
| | : |
| | : |
| **Defendants.** | : |
| _____ | : |
| | : |
| | : |
| | : |
| **WATERSIDE PROPERTY** | : |
| **OWNERS ASSOCIATION, INC.,** | : |
| | : |
| **Crossclaim Plaintiff,** | : |
| | : |
| v. | : |
| | : |
| **PHILADELPHIA INDEMNITY** | : |
| **INSURANCE COMPANY,** | : |
| | : |
| **Crossclaim Defendant.** | : |
| | : |
| _____ | : |
| | : |
| **WATERSIDE PROPERTY** | : |
| **OWNERS ASSOCIATION, INC.,** | : |
| | : |
| **Third-Party Plaintiff,** | : |
| | : |
| v. | : |

1

**CERTAIN UNDERWRITERS AT** :
**LLOYD'S, LONDON, NATIONAL** :
**FIRE & MARINE INSURANCE** :
**COMPANY and INDIAN HARBOR**:
**INSURANCE COMPANY,** :
                                            :
     **Third-Party Defendants.**      :                          :

Submitted: August 24, 2022
Decided: September 21, 2022

*Motion of Third-Party Defendants for Dismissal of Third-Party Plaintiff's
Third-Party Complaint and Related Crossclaims*

**GRANTED IN PART AND DENIED IN PART**

**MEMORANDUM OPINION AND ORDER**

Richard E. Berl, Esquire, Hudson, Jones, Jaywork & Fisher, LLC, 34382 Carpenter's Way, Suite 3, Lewes, DE 19958, Attorney for Plaintiff.

Robert J. Valihura, Jr., Esquire, Morton, Valihura & Zerbato, LLC, 3704 Kennett Pike, Suite 200, Greenville, DE 19807, Attorney for Defendant, Crossclaim Plaintiff and Third-Party Plaintiff Waterside Property Owners Association, Inc.

Bruce W. McCullough, Esquire, Boddel Bove, LLC, 1225 King Street, Suite 1000, Wilmington, DE 19801, Attorney for Defendant and Crossclaim Defendant Philadelphia Indemnity Insurance Company.

Eileen M. Ford, Esquire, and Ryan D. Kingshill, Esquire, Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., 300 Delaware Avenue, Suite 900, Wilmington, DE 19801, Attorney for Third-Party Defendants.

**KARSNITZ, R.J.**

## I.     INTRODUCTION

This case involves the respective liability of two insurance companies which had policies with the same insured, one policy covering  general liability and property damage (the "General Policy"), and the other covering wind and hail damage (the "Wind Policy"), which was expressly excluded from the first policy.[1] The insured under both policies is Waterside Property Owners Association, Inc., a Delaware corporation ("Waterside"), the homeowners' association for the Townhouses of Waterside II, Phase 3, Canal Woods at Waterside, a condominium. A common element (the roof) of unit 64, Stage 1 of the condominium (the "Unit") was allegedly damaged, causing a loss to the owner.  The nearly six-year period between that occurrence and this opinion demonstrates how the twists, turns and delays that result from disputed claims among multiple insurers can result in protracted and expensive litigation.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This Motion to Dismiss Third-Party Complaint and Related Crossclaims (the "Motion") under Superior Court Civil Rule 12(b)(6) and/or Superior Court Rule 12(c)[2] arises from an insurance coverage dispute surrounding an alleged roof leak

---

[1] As a practical matter, the Wind Policy is an excess lines policy which only provides coverage upon the denial of the underlying General Policy.

[2] Pursuant to Super. Ct. Civ. R. 12(c), when on a motion for judgment on the pleadings, matters

discovered by Plaintiff Michael Vito ("Plaintiff") in the Unit on November 11, 2016.[3] Plaintiff is the record title owner of the Unit, with an address of 33691 Canal Drive, Frankford, Delaware 19945.[4] Plaintiff reported the leak to Waterside and to Waterside's property manager and registered agent, Seascape Management ("Seascape").[5] Seascape claims it reported the leak that same day to its insurance broker, L&W Insurance, Inc. ("L&W"), who in turn reported the claim to Defendant Philadelphia Indemnity Insurance Company ("Philadelphia"), with whom Waterside has the General Policy.[6] Waterside also has the Wind Policy with Certain Underwriters at Lloyd's, London, National Fire & Insurance Company and Indian Harbor Insurance Company ("Lloyd's"), which provides coverage for loss or damage directly caused by wind and hail.

In a letter dated September 18, 2017 and addressed to Seascape, Philadelphia denied the claim, based on its conclusion that high winds loosened a rooftop vent cap, causing the leak, and therefore the claim was excluded from coverage under the "Windstorm or Hail Exclusion" of the General Policy.[7] Waterside claims that

---

outside the pleadings are presented and not excluded by me, the motion shall be treated as one for summary judgment and disposed of as provided in Super. Ct. Civ. R. 56.

[3] D.I. 1, Tr. #66833431, at ¶ 4.

[4] Plaintiff and his wife, Christy Cronin, both lived in the Unit during the period in question. While Ms. Cronin is not an owner of the Unit, Plaintiff's Complaint refers to Mr. Vito and Ms. Cronin as "Plaintiffs."

[5] D.I. 1, Tr. #66833431, at ¶ 5.

[6] D.I. 12, Tr. #67090394, at ¶¶ 4-5.

[7] D.I. 1, Tr. #66833431, at Exhibit D, pg. 1.

Philadelphia never sent this letter; Philadelphia asserts it issued the letter to Seascape on the listed date.[8]

In any event, Lloyd's first receipt of the claim was on August 19, 2019, when Waterside, through L&W, reported the claim to Lloyd's.[9] On October 10, 2019, Lloyd's denied Waterside's claim because Lloyd's investigation revealed that the proximate cause of the damages to the unit "was the result of a deteriorated rubber gasket around the roof jack, which was replaced prior to the inspection."[10] The claim was also denied because the "claim occurred over two (2) years before the claim notice was submitted."[11]

Plaintiff filed his Complaint against Waterside and Philadelphia on August 9, 2021.[12] On November 12, 2021, Waterside filed its Crossclaim against Philadelphia and its Third-Party Complaint against Lloyd's.[13] The Counts in the Third-Party Complaint against Lloyd's include: Count I, a statutory claim under the Delaware Unfair Claim Settlement Practices Act[14] (the "Statutory Claim"), Count II, a claim for a declaration[15] that Lloyd's is obligated to cover the loss under the Wind Policy (the "Declaratory Relief Claim"), and Count III, a claim that Lloyd's acted in bad

---

[8] D.I. 12, Tr. #67090394, at ¶6; D.I. 21, Tr. #67188679, at ¶6.
[9] D.I. 24, Tr. #67235744, at ¶9.
[10] D.I. 1, Tr. #66833431, at Exhibit E, pg. 3.
[11] *Id.*, pg. 4.
[12] D.I. 1, Tr. #66833431.
[13] D.I. 12, Tr. #67090394.
[14] 18 *Del. C.* §2304(16).
[15] Under 10 *Del. C.* §6501, *et seq*.

faith (the "Bad Faith Claim"). On December 22, 2021, Philadelphia filed its Answer to Waterside's Crossclaim.[16] On January 14, 2022, Lloyd's filed its Answer to Waterside's Third-Party Complaint.[17] Lloyd's and Philadelphia also filed indemnification Crossclaims against each other.[18]

With answers and crossclaims filed, the case proceeded to the discovery phase, and on March 14, 2022, this Court entered a Pretrial Scheduling Order with a trial date of June 5, 2023.[19] Also on March 14, 2022, Waterside propounded discovery against Lloyd's.[20] No response to discovery has been forthcoming from Lloyd's.

Instead, on March 30, 2022, Lloyd's filed the Motion.[21] On June 6, 2022, Waterside filed its Answering Brief to the Motion (the "Answer").[22] On June 22, 2022, Lloyd's filed its Reply Brief in Support of the Motion (the "Reply").[23] I held oral argument on the Motion on August 24, 2022. This is my ruling on the Motion.

---

[16] D.I. 21, Tr. #67188679.
[17] D.I. 24, Tr. #67235744.
[18] D.I. 25, Tr. #67268960; D.I. 27, Tr. #67321226.
[19] D.I. 28, Tr. #67392171.
[20] D.I. 29, Tr. #67393053.
[21] D.I. 31, Tr. #67439259.
[22] D.I. 39, Tr. #67696250.
[23] D.I. 40, Tr. #67749525.

## III. STANDARDS OF REVIEW

**Rule 12(b)(6)**

In evaluating a motion to dismiss for failure to state a claim upon which relief can be granted under Superior Court Civil Rule 12(b)(6):

> [T]he court accepts all factual allegations in the complaint and will deny the motion unless the plaintiff could not recover under any reasonably conceivable circumstances.[24]

Although the Court "must accept all 'well-pleaded' allegations as true for purposes of a Rule 12(b)(6) motion to dismiss, it will also 'ignore conclusory allegations that lack specific supporting factual allegations.'"[25]  The Court:

> must determine whether the claimant may recover under any reasonably conceivable set of circumstances susceptible of proof. [The Court] must also accept all well-pleaded allegations as true and draw every reasonable factual inference in favor of the non-moving party. This reasonable "conceivability" standard asks whether there is a "possibility" of recovery.[26]

**Rule 12(c)**

In evaluating a motion for a judgment on the pleadings under Superior Court Civil Rule 12(c):

> The Court must accept all well-pleaded facts in the complaint as true and draw inferences from those facts in the light most favorable to the non-moving party. A moving party is entitled to judgment on the

---

[24] *Doe v. Colonial Sch. Dist.*, 2011 WL 7063682, at *2-3 (Del. Super. Dec. 27, 2011).

[25] *Prather v. Doroshow, Pasquale, Krawitz & Bhaya*, 2011 WL 1465520, at *17 (Del. Super. Apr. 14, 2011) (internal citations omitted).

[26] *Biomeme, Inc. v. McAnallen*, 2021 WL 5411094, at *7 (Del. Super. Nov. 10, 2021).

> pleadings only when there are no material issues of fact and the movant is entitled to judgment as a matter of law.[27]

It has been said that the standard for a motion for judgment on the pleadings under Rule 12(c) is "almost identical" to the standard for a motion to dismiss under Rule 12(b)(6).[28] Pursuant to Rule 12(c), when on a motion for judgment on the pleadings, matters outside the pleadings are presented and not excluded by the Court, the motion shall be treated as a motion for summary judgment and disposed of under Superior Court Civil Rule 56, and all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

## IV.  ANALYSIS

### Count II -- Declaratory Relief

I address this claim first because it is a claim made pursuant to the Wind Policy between Waterside and Lloyd's. The claim is subject to contractual defenses, including notice and contract limitations. Lloyd's asserts that Waterside did not timely (1) notify Lloyd's of the loss, damage, or occurrence giving rise to a potential claim under the Wind Policy, as required by Article XV of the Wind Policy, or (2) file suit for recovery of any claim under the Wind Policy, as required by Article XIX. Thus, argues Lloyd's, it is not obligated to cover any loss under the Wind Policy.

---

[27] *Horizon Servs. v. Henry*, 2022 WL 1316236, at *1 (Del. Super. May 2, 2022).
[28] *Tibco Software Inc. v, Mediamath, Inc.*, 2019 WL 3034781, at *4 (Del. Super. Jul. 10, 2019).

The Wind Policy requires Waterside to report "as soon as possible … every loss, damage or occurrence which may give rise to a claim under" the Wind Policy.[29] Under Delaware law, "[w]hen a casualty insurance policy requires notice be given 'as soon as practicable,' an insurer must demonstrate: (1) that the insured did not provide notice as soon as practicable, and (2) that the insurer suffered prejudice as a result of the delay."[30] Courts adjudicate the notice requirement using the reasonable person standard, considering the facts surrounding the claim and reasons for delayed notification.[31] As to prejudice, courts weigh whether "Defendant is in a less favorable position to defend Plaintiff's claim than it would have been had the notification been 'as soon as practicable.'"[32]

The Wind Policy also contains a provision which states that:

> No suit . . . for the recovery of any claim under this Policy shall by sustainable in any court of law or equity unless . . . you are in full compliance with all the terms of this policy … and the same be commenced within 12 months after the occurrence which gives rise to the claim provided . . . if by the laws of the state within with this Policy is issued such limitation is invalid . . . any such claims shall be void unless such . . . suit . . . be commenced within the shortest limit of time permitted by the laws of such state.[33]

---

[29] Article XV of Wind Policy.
[30] *Northrop Grumman Innovation Sys. v. Zurich Am. Ins. Co.*, 2021 WL 347015, at *33 (Del. Super. Feb. 2, 2021) (internal citations omitted).
[31] *Wilhelm v. Nationwide Gen. Ins. Co.*, 2011WL 4448061, *12 (Del. Super. May 11, 2011).
[32] *Id*. at *16. Lloyd's argues that it was prejudiced by the time delay, in that it can no longer examine the defect, which has since been repaired. Waterside argues that prejudice to Lloyd's is a question of fact. I need not address the prejudice issue given my partial granting of Lloyd's Motion.
[33] Article XIX of the Wind Policy.

Under Delaware law, "contractual limitation of action periods are valid if they are reasonable."[34] Delaware Courts have regularly found one-year limitations reasonable.[35] The Delaware Supreme Court has ruled that one-year periods of limitations are reasonable and binding upon the insured.[36] Under the terms of the Wind Policy, Waterside was required to initiate a suit for the recovery of any claim under the Wind Policy within one year of the "occurrence" giving rise to a potential claims under the Wind Policy. The term "occurrence" is defined in the Wind Policy as "any one disaster, accident or loss or series of disasters, accidents or losses which are covered Causes of Loss ... ." Under this definition, the "occurrence" was November 11, 2016 (the date Plaintiff alleges the leak occurred). However, even if the "occurrence" were deemed to be August 19, 2019 (the date Plaintiff notified Waterside of the claim) or October 10, 2019 (the date Lloyd's denied the claim), Waterside did not file its Third-Party Complaint against Lloyd's within the one-year period, but rather over two years later, on November 12, 2021.

Waterside makes three contentions to rebut Lloyd's arguments.[37] First, Waterside contends that, under Rule 12(b)(6), its well-pled facts, which I must

---

[34] *Rob-Win, Inc. v. Lydia Sec. Monitoring, Inc*., 2007 WL 3360036, at *11-12 (Del. Super. Apr. 30, 2007).
[35] *Id*. at *12.
[36] *Woodward v. Farm Family Cas. Ins. Co*., 796 A.2d 638, 642-43 (Del. 2002) (citation omitted).
[37] On January 14, 2022, Lloyd's filed its Answer to Waterside's Third-Party Complaint. On March 30, 2022, Lloyd's filed the Motion. Super. Ct. Civ. R. 12(b) states that "[a] motion … shall be made before pleading if a further pleading is permitted." As a threshold matter, Waterside argues that the Motion was thereby waived as having been filed after the Answer. In my judicial discretion, I am going to allow the Motion.

accept as true, require me to deny the Motion because there is a "reasonably conceivable" set of circumstances under which Waterside will recover against Lloyd's. Waterside also argues that, under Rule 12(c), it states non-conclusory facts which provide a legal basis upon which Lloyd's could be held liable to Waterside, and thus I must deny the Motion to the extent it is deemed to be a motion for judgment on the pleadings.

Second, Waterside argues that its well-pled allegations in the Third-Party Complaint preclude a dismissal at this stage of the litigation based on the issue of its notice to Lloyd's of the occurrence "as soon as practicable." Waterside contends that this is a question of fact, which can only be decided after trial of the matter, and that I must deny the Motion because there is a "reasonably conceivable" set of circumstances under which Waterside will recover against Lloyds because those facts, as pled, demonstrate, at least at the pleading stage, that Waterside acted not only "as soon as practicable" but as soon as it was able to do so. Even if I were to apply the standard of review for judgment on the pleadings, Waterside argues that I must still deny the Motion, because the issue of whether Waterside acted "as soon as practicable" is a question of fact, which can only be decided after trial of the matter. Waterside cites our Supreme Court:

[A] mere lapse of time is not necessarily the determining factor; the …
question is whether notice is given within a reasonable time in view of
the facts and circumstances of the particular case.[38]

Waterside argues that this "reasonable time" standard requires discovery, and that

the final determination of whether the notice was given within a reasonable time can

only be made after a trial of the matter, and after my consideration by as to whether

the actions of Waterside were within a reasonable time, given all that transpired

during the period of delay. Thus, asserts Waterside, because there is a question of

fact as to whether notice was given within a reasonable time in view of the

circumstances here, a request for judgment on the pleadings, which requires the

existence of no material dispute of fact, must be denied.

I disagree with Waterside's first two arguments. This case involves more than

a "mere lapse of time." The time delays are substantial. Given Delaware law on

notice of an occurrence to the insurer "as soon as practicable," and the enforceability

of time limitations on the filing of a suit on a claim under the policy after an

occurrence, and given the lengthy delays here, I find no set of circumstances under

either Rule 12(b)(6) or Rule 12(c) under which Waterside could recover against

Lloyd's for a claim of a loss, damage or occurrence under the Wind Policy given the

provisions of Article XV or Article XIX of the Wind Policy.

---

[38] *State Farm Mut. Auto. Ins. Co. v. Johnson*, 315 A.2d 585, 587 (Del. 1973) (citing *Home Indem. Co. v. Ware*, 183 F. Supp. 367, 368 (D. Del. 1960)).

With respect to the requirement of notice of an occurrence "as soon as practicable," and applying a "reasonable time" standard, even assuming *arguendo* that Philadelphia never sent its denial letter, a reasonable entity in Waterside's position would have discovered Philadelphia's denial and notified Lloyd's of its claim sooner. There is a nearly three-year gap between Waterside's first report to Philadelphia and Waterside's discovery of Philadelphia's denial. At no point did Waterside receive any payments from Philadelphia or receive word from Plaintiff that Philadelphia covered his repairs. Nevertheless, in nearly three years, Waterside took no action to follow-up on its claim nor check to see if it needed to file with any of its other insurers. If Waterside had done so, it would have obtained information that would have allowed it to provide timely notice of a loss to, and file a timely suit for a claim against, Lloyd's under the Wind Policy.

Under the terms of the Wind Policy, Waterside was required to initiate suit within one year of the "occurrence," which was November 11, 2016, the date Plaintiff alleges the leak occurred. However, even if the "occurrence" is deemed to be August 19, 2019 (the date Waterside notified Lloyd's of the claim) or October 10, 2019 (the date Lloyd's denied the claim), Waterside failed to timely file its Third-Party Complaint against Lloyd's within the one (1) year contractual suit limitation period. Instead, Waterside filed its Third-Party Complaint against Lloyd's over two (2) years later, on November 12, 2021.

Therefore, Lloyd's Motion to Dismiss is **GRANTED** as to Waterside's Declaratory Relief Claim, with respect to the issues of notice to the insurer "as soon as practicable" and timely filing of a suit for a claim under the Wind Policy. Inasmuch as Waterside's Third-Party Complaint against Lloyd's fails as a matter of law with respect to the Declaratory Relief Claim, so too do the Crossclaims asserted by Philadelphia against Waterside as to that claim, because the sole reason for Lloyd's presence in this matter derives from the Wind Policy with Waterside and no other party. Consequently, crossclaims asserted by Philadelphia against Lloyd's for contribution and/or indemnification with respect to the Declaratory Relief Claim are moot with respect to those two issues.

**Counts I and III -- Statutory Claim and Bad Faith Claim**

Third, Waterside argues that, even if I grant the Motion in part, its Third-Party Complaint contains no contractual claims against Lloyd's for loss, damage, or occurrences under the Wind Policy. Rather, there remain two claims: the Statutory Claim and the Bad Faith Claim. These two Claims are not claims for a recovery of any claim under the Wind Policy, but rather standalone claims related to Waterside's recovery from Lloyd's because of its alleged illegal, wrongful, and tortious behavior. These two claims, both directed at Lloyd's actions and inactions, and its alleged unlawful and wrongful conduct, are therefore not covered claims under the one-year limitation period provision under the Wind Policy because neither seeks the recovery

14

of any claim under the Wind Policy. Waterside argues that the Wind Policy must be read as excluding from the litigation limitation such claims as are related to standalone wrongful, tortious, or illegal conduct, given the plain and unambiguous meaning of the language used in the Wind Policy. If that language is ambiguous, since it was drafted by Lloyd's it must be strictly construed against Lloyd's under accepted rules of contractual interpretation. The narrow limitation that the one-year lawsuit limitation imposes on the types of claims subject thereto does not, argues Waterside, include every cause of action that may arise against Lloyd's, and certainly not the Bad Faith Claim and the Statutory Claim that are alleged in Waterside's Third-Party Complaint.

In its Reply, Lloyd's argues that the Statutory Claim and the Bad Faith Claim are not standalone claims. Since they originate solely from Lloyd's actions in responding to and investigating Waterside's claim under the Wind Policy, they are barred by the Wind Policy's notice of loss and one-year suit limitation provisions as a matter of law.

Lloyd's further argues that this is the unambiguous, plain, ordinary meaning of the Wind Policy language and gives effect to the parties' mutual intent at the time of contracting.[39] I am, of course, bound to apply such plain meaning to this insurance

---

[39] *Northrop Grumman Innovation Sys. v. Zurich Am. Ins. Co.,* 2021 WL 347015 (Del. Super. Feb. 2, 2021).

policy: "[T]he language in insurance contracts is interpreted according to its plain meaning."[40] Thus, argues Lloyd's, the Statutory Claim and the Bad Faith Claim should be dismissed as a matter of law.

Here the language is:

[N]o suit, action or proceeding for the recovery *of any claim under this policy* shall be sustained … unless … commenced within twelve months after the occurrence … [emphasis suppled]

This language is plain and only covers claims under the Wind Policy. The claims in Counts I and III are not, in my view, "under the policy," but pursuant to statutory provisions. Even were I to find this language ambiguous, I would construe it against the drafter (Lloyd's) and in favor of Waterside.

**Count III -- Bad Faith Claim**

In Count III of its November 12, 2021 Third-Party Complaint against Lloyd's, Waterside asserts a Bad Faith Claim against Lloyd's. It claims that Lloyd's:

- refused to pay its wind claim without first conducting a reasonable investigation based upon all available information.

---

[40] *Shook & Fletcher Asbestos Settlement Tr. v. Safety Nat'l Cas. Corp.*, 2005 WL 2436193, at *13 (Del. Super. Sept. 29, 2005).

- did not attempt in good faith to effectuate a prompt, fair and equitable settlement of a covered loss.

- ignored Philadelphia's September 18, 2017 finding that the occurrence was caused by wind, and instead based its denial of the wind claim on the replacement of a single roof component.

- failed to promptly provide a reasonable explanation of the applicable policy language in relation to the facts or applicable law for denial of the wind claim.

- compelled Waterside to institute litigation in the form of the Crossclaim and the Third-Party Complaint to recover amounts due under an insurance policy.

There has been no briefing or discovery with respect to the Bad Faith Claim. There remains an existing contract between Waterside and Lloyd's – the Wind Policy -- which may or may not give rise to a Bad Faith Claim. In any event, it is premature for me to consider a motion for dismissal of the Bad Faith Claim. At the appropriate time, I would certainly entertain arguments from both parties regarding the Bad Faith Claim.

**Count I -- Statutory Claim**

In Count I of its November 12, 2021 Third-Party Complaint against Lloyd's, Waterside asserts a claim against Lloyd's under the Delaware Unfair Claim Settlement Practices Act.[41]  It claims that Lloyd's:

- was a party to a valid insurance contract with Waterside.

- refused to pay the wind claim without first conducting a reasonable investigation based upon all available information.

- did not attempt in good faith to effectuate a prompt, fair and equitable settlement of a covered loss.

- Ignored Philadelphia's September 18, 2017 finding that the occurrence was caused by wind, and instead based its denial of the wind claim on the replacement of a single roof component.

- failed to promptly provide a reasonable explanation of the applicable policy language in relation to the facts or applicable law for denial of the wind claim.

---

[41] 18 *Del. C.* §2304 (16).

- compelled Waterside to institute litigation in the form of the Crossclaim and the Third-Party Complaint to recover amounts due under an insurance policy.

There has been no briefing or discovery with respect to the Statutory Claim. Lloyd's raised the issue of whether such a claim is cognizable under Delaware law in its Reply Brief. At a minimum, due process requires that all parties have an opportunity to address the Statutory Claim in a more fulsome manner. For this reason alone, the Statutory Claim in not now susceptible to a motion to dismiss.

In its Reply, Lloyd's argues that a line of Delaware cases holds that the Delaware Unfair Claim Settlement Practices Act does not provide for a private cause of action, nor does the Act support an implied breach of duty claim.[42] Therefore, Lloyd's asks me to dismiss the Statutory Claim as a matter of law.

However, in my view it is premature for me to consider a motion for dismissal of the Statutory Claim. At the appropriate time, I would certainly entertain arguments from both parties regarding the Statutory Claim.

## V.    CONCLUSION

For the reasons discussed above, the Motion of Third-Party Defendants for

---

[42] See, e.g., *Peterson v. 21st Century Centennial Ins. Co.*, 2015 WL 4154070, at *9 (Del. Super. July 9, 2015) ("this Court has repeatedly held that 18 *Del. C*. § 2301, *et seq*., and specifically § 2304(16) does not provide for a private cause of action.")

Dismissal of Third-Party Plaintiff's Third-Party Complaint and All Related Crossclaims is **GRANTED** as to the Declaratory Relief Claim and **DENIED** as to the Statutory Claim and the Bad Faith Claim.

**IT IS SO ORDERED.**

<u>/s/ Craig A. Karsnitz</u>

cc:    Prothonotary