101 N.J. Super. 322 (1968)
244 A.2d 322
ALLSTATE INSURANCE COMPANY, A BODY CORPORATE AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, PLAINTIFF,
v.
RAYMOND GRILLON AND GEORGE A. BRADLEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Argued May 13, 1968.
Decided May 23, 1968.
*325 Mr. Ralph W. Campbell for plaintiff (Messrs. Campbell, Mangini, Foley & Lee, attorneys).
Mr. Thomas T. Warshaw for defendant, Raymond Grillon (Messrs. Drazin, Warshaw, Auerbach & Rudnick, attorneys).
LANE, J.S.C.
The complaint seeks a declaratory judgment relieving the plaintiff (Allstate) of liability under an automobile liability insurance policy in connection with an action now pending in the Law Division entitled "Raymond Grillon v. George A. Bradley and Kenneth Douglas" and bearing Docket No. L-17880-65. The Law Division action has been stayed pending the outcome of these proceedings. No service was made upon the defendant Bradley in this action although notice was given to him by publication. He has not entered an appearance. The matter is before the Court on final hearing.
On August 13, 1964, Raymond Grillon (defendant herein and plaintiff in the Law Division action) was injured when he was struck by a parked automobile which in turn had been struck by an automobile owned by Kenneth Douglas and operated by George A. Bradley. At the time of the accident there was in force a policy of automobile liability insurance issued by Allstate to Kenneth Douglas covering the vehicle driven by Bradley. Proper notice of the accident was given to Allstate which promptly commenced its investigation. A copy of the police report was obtained on or about August 19, 1964 which indicated that another vehicle may have caused or contributed to the accident by cutting Bradley off. A detailed written statement was taken from Bradley in early September 1964. This statement indicated that there *326 was no agency between Bradley and Douglas at the time of the accident and also that there would be a substantial defense on the question of liability for the accident.
Shortly after the accident Allstate attempted to interview Grillon but was unable to do so at first because of his condition and later because it was advised that Grillon was represented by an attorney.
As a result of the accident Grillon sustained a compound fracture of the right tibia and fibula. He was taken to Patterson Army Hospital where he remained until April 28, 1965 except for periods of convalescent leave. While he was at the hospital, there were three operations performed. The United States Government has asserted a claim for hospital care in the amount of $4,151. Allstate was advised by Grillon's attorney that he had received no civilian medical care, but that he was to be examined by a civilian doctor for evaluation purposes.
On June 27, 1965, Allstate requested a physician, chosen by it to evaluate Grillon's injuries, to obtain a physical examination of him. When the doctor was unable to arrange the examination, Allstate contacted the attorney representing Grillon on July 27, 1965, October 8, 1965, October 15, 1965, October 27, 1965 and May 9, 1966. On each occasion there were protestations of cooperation, but Allstate was never able to obtain a physical examination. The attorney who at that time was representing Grillon knew the interest of Allstate, its claim file number and the name of the claimsman in charge.
The Law Division action was instituted February 24, 1966 against both Bradley and Douglas. Summons and complaint was served personally upon Bradley on March 21, 1966. No service was made upon Douglas. Upon being served with the summons and complaint, Bradley made no attempt to send it to Allstate or to notify Allstate of the institution of suit although he knew that Allstate was the automobile liability insurer. He left the State of New Jersey and went to California on April 9, 1966 without notifying anybody that he *327 was going. Since that time Bradley has returned to New Jersey briefly on about seven occasions. He testified that under no circumstances was he going to tell Allstate where he could be located. It was not until October 25, 1967  one year, seven months and four days after service upon Bradley  that Allstate was advised that suit had been commenced. The advice and a copy of the summons and complaint was received from Grillon's present attorneys, who were not substituted in the Law Division action until shortly before October 25, 1967, on which date the substitution of attorney was filed.
The insurance policy provides in Condition No. 2:
"If claim is made or suit is brought against the insured, he shall immediately forward to Allstate every demand, notice or summons received by him or his representative."
Although at the time of the accident Bradley was not operating the vehicle as the agent of the policyholder, he was operating the vehicle with the policyholder's permission. Bradley was, therefore, under the terms of the policy an additional insured. The condition as to forwarding suit papers is applicable to him. No excuse was offered for Bradley's failure to forward the summons and complaint to Allstate. The Court finds that there was a breach of Condition No. 2 by Bradley.
Recently (after the institution of this action) in Cooper Government Employees Ins. Co., 51 N.J. 86, 94 (1968), the Supreme Court held in a case involving notice of accident that to be relieved of liability for the breach of that condition, an insurer has the burden of not only proving the breach but also of showing that the breach resulted in "a likelihood of appreciable prejudice" to it. Allstate does not contest the applicability of Cooper to a breach of condition to forward suit papers immediately but argues that Cooper is not applicable because it should not be given a retrospective application. Such position is not tenable. The same argument was made when the rule of charitable immunity was abrogated by the Court. The Supreme Court held that the *328 prevailing doctrine that the overruling of a judicial decision is retrospective should be applied. Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958). See also, Fox v. Snow, 6 N.J. 12 (1950); Ross v. Board of Chosen Freeholders of Hudson, 90 N.J.L. 522 (E. & A. 1917).
In its attempt to show the likelihood of appreciable prejudice, Allstate asserts the following:
(1) It was unable to obtain a reasonably early physical examination of Grillon although, had summons and complaint been sent promptly to it in accordance with the terms of the policy, it would have been in a position to require Grillon to submit to such examination. As closely related ground, Allstate asserts that it was deprived of an opportunity to take Grillon's deposition and to examine him concerning his activities during the time that he was receiving care and upon his discharge, as well as the depositions of other persons who may have had knowledge in that area but who now may be unavailable. Grillon was in the Army at the time of the accident and received all his treatment in an Army hospital. How long after the accident he remained in the Army was not shown.
(2) At the time the complaint in this action was filed and in fact up to the second day of the trial, May 13, 1968, Allstate was unable to locate Bradley, whereas had the summons and complaint been sent to it in accordance with the policy terms, Allstate would have contacted him and thus have been able to keep a check on his whereabouts.
(3) At this late date, the Law Division may not grant time for discovery.
These assertions will be dealt with in inverse order.
No default was entered against Bradley in the Law Division action. The attorneys representing Grillon in that action have consented to the filing of an answer on behalf of Bradley out of time. They also will not oppose an application for an extension of the time for discovery. It is inconceivable that the Law Division would not extend the time for discovery if this Court declares that Allstate is obligated *329 to defend Bradley. Item (3) above does not lead to the likelihood of appreciable prejudice.
The evidence showed that had the summons and complaint been forwarded to Allstate immediately after service upon Bradley, it would have done nothing about keeping a check on Bradley's whereabouts. In fact, it would not have tried to contact Bradley until about one week before the trial unless, of course, notice was given that his deposition was to be taken. Allstate's efforts to locate Bradley could have been more vigorous. Notwithstanding this fact, however, in all probability Allstate would have been unable to locate him because he admitted that he willfully withheld from Allstate information as to his whereabouts. He testified that he was not under any circumstances going to tell Allstate where he was. As noted above, Bradley appeared on the second day of the trial before this Court. His presence was obtained by Grillon who in a circuitous way had located Bradley when he was temporarily in New York City. Bradley testified that he appeared at the trial of this case because he was afraid that if he did not he would lose his license which would have resulted in his being unable to continue his job as a truck driver. The proof noes not sustain Allstate's assertion in Item (2).
Did the failure of Bradley to immediately forward the summons and complaint to the plaintiff result in "a likelihood of appreciable prejudice" based upon the contentions in Item (1)?
In the Law Division action the nature, extent and duration of Grillon's injuries will be a vital issue. It is a matter of common knowledge that it is of prime importance in the defense of a personal injury action where the injuries are as serious as those alleged by Grillon that the defendant have its own doctor make a physical examination of the claimant within a reasonable time after the accident. A claims representative of Allstate testified that in an accident resulting in injuries such as those sustained by Grillon, Allstate in order to adequately protect its insured would attempt *330 to obtain a physical examination of the claimant about nine months after the accident. The actions of Allstate show that it was following this procedure in the instant case.
Had the summons and complaint been forwarded immediately to Allstate, it would have moved under R.R. 4:25-1 for an order compelling Grillon to submit to a physical examination. This Court is not aware of any procedure under our Rules of Court by which a prospective defendant can compel an injured person who is expected to bring an action to recover damages for personal injuries to submit to a physical examination prior to the institution of suit. There is authority out of State where courts acting under a provision similar to our R.R. 4:17-1 have required an injured person to submit to a physical examination prior to suit. See, e.g., Block v. Superior Court of Los Angeles County, 219 Cal. App.2d 469, 33 Cal. Rptr. 205, 98 A.L.R.2d 901 (Dist. Ct. App., 2d Dist. 1963). See also Martin v. Reynolds Metals Corporation, 297 F.2d 49 (9th Cir. 1961). There are no reported decisions in this State granting or denying to a prospective defendant the right to obtain a physical examination prior to suit under R.R. 4:17-1. This Court is aware of at least one instance where a trial court denied such an application. In the Matter of the Petition of Erna J. Grotz to Perpetuate the Testimony of Gino Miraglia, Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-18206-65. Although Grillon could have waited for one year and 364 days before instituting suit and thereby have prevented a physical examination that long, once suit had been started Allstate had it been notified immediately would have promptly moved for an examination and obtained it. In no event would it have waited for a period of more than three years.
Cooper v. Government Employees Ins. Co., supra, does not give any guidelines as to what is meant by "a likelihood of appreciable prejudice" because it was not necessary to reach that issue. (51 N.J., at pp. 94-95.)
*331 "Prejudicial" has been defined as meaning "disadvantageous; harmful; hurtful; injurious." 72 C.J.S. p. 481. Such a definition is of little aid.
The meaning of prejudice can be found in an analogous situation where the equitable defense of laches is pleaded. To establish that defense there must be a finding of prejudice. West Jersey Title, etc. Co. v. Industrial Trust Co., 27 N.J. 144, 153 (1958); Pavlicka v. Pavlicka, 84 N.J. Super. 357, 368 (App. Div. 1964); Auciello v. Stauffer, 58 N.J. Super. 522, 530 (App. Div. 1959); Tierman v. Carasalio Pines, 51 N.J. Super. 393, 410 (App. Div. 1958).
The meaning of this general rule requiring a showing of prejudice is stated in 2 Pomeroy, Equity Jurisprudence (5th ed. 1941), § 419 (d), pp. 178-179:
"Laches in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel (see § 816) against the assertion of the right."
The same standard should be applied to determine whether a breach of condition in an insurance policy has resulted in prejudice or in "a likelihood of appreciable prejudice" to the insurer. If it is clear that the position of the insurer with reference to the proper defense of the insured has become so changed by reason of the breach that the insurer cannot be restored to the position it would have been in had there been no breach, it must be held that the breach resulted in prejudice to the insurer. If it is clear that the position of the insurer with reference to the proper defense of the insured may have become so changed by reason of the breach that the insurer cannot be restored to the position it would have been in had there been no breach of condition, it must be held that the breach resulted in "a likelihood of *332 appreciable prejudice". The answer of necessity will depend upon the facts of each case.
Of course, Allstate may now obtain a physical examination of Grillon. Such examination would show the permanent disability of Grillon. It would, however, be of little aid on the question of the duration of any temporary disability. In addition, steps Allstate would have likely taken in the defense of the Law Division action may no longer be available to it  for example, an investigation among Grillon's co-workers and supervisors, whether they be Army or civilian, as to his activities following his discharge from the hospital. It also may be impossible at this late date to investigate adequately the claim of loss of income which is set forth in the complaint in the Law Division. There is no way in which Allstate can be restored to the position it would have been in had Bradley complied with Condition No. 2 of the policy.
The policy expressly provides that:
"No action shall lie against Allstate until after full compliance with all the terms of this policy * * *."
Therefore, Toub v. Home Indemnity Co., N.Y., 116 N.J.L. 287 (Sup. Ct. 1936), which required the showing of actual prejudice where there had been a breach of condition to forward suit papers is not applicable. The Court finds that the failure of Bradley to forward the summons and complaint immediately to Allstate resulted in "a likelihood of appreciable prejudice" in preventing Allstate from obtaining a physical examination of Grillon for a period of approximately one year, seven months and four days. Cf., Velkers v. Glens Falls Ins. Co., 93 N.J. Super. 501, 513, (Ch. Div. 1967), affirmed o.b. 98 N.J. Super. 166 (App. Div. 1967). In addition, such failure also resulted in "a likelihood of appreciable prejudice" by depriving Allstate of its opportunity in the Law Division action to take the deposition of the plaintiff early in the case and to fully investigate among his *333 co-workers and supervisors claims that he may have of inability to fulfill his normal function resulting from the accident. As noted above, at the time of the accident Grillon was a member of the Armed Forces. Those men with whom he was associated and under whom he served may very well be completely unavailable at this time.
The defendant Grillon contends that the plaintiff has failed to join an indispensable party, the Unsatisfied Claim and Judgment Fund. However, the decision here will not affect the Fund's rights nor any ultimate financial responsibility to which it may be exposed. Before the Fund can be held responsible, there must first be a judgment in favor of Grillon. Even then, the Fund has its protection under N.J.S. 39:6-70. The Fund might well have been joined but it is not an indispensable party. Cf., McGainey v. Cable, 65 N.J. Super. 202 (App. Div. 1961). The statute creating the Fund contains no provision authorizing it to intervene in an action to determine whether there is coverage under an automobile liability insurance policy. In any event, the interest of the Fund, if any, was adequately protected by the attorneys for Grillon who have contested the claim of Allstate tenaciously and with extreme capability. Grillon's interest was obvious. His attorneys felt that a recovery in the Law Division action would exceed the limitations of the Fund's liability. An example of their industry is that they produced Bradley whom Allstate had been unable to find although it had engaged three independent agencies to locate him.
There will be a judgment declaring that the plaintiff is under no obligation to defend Bradley or to pay any judgment that may be rendered against him in the action brought by Grillon in the Law Division.