105 N.J. Super. 254 (1969)
251 A.2d 777
ALLSTATE INSURANCE COMPANY, A BODY CORPORATE AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RAYMOND GRILLON, DEFENDANT-APPELLANT, AND GEORGE A. BRADLEY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1969.
Decided April 7, 1969.
*255 Before Judges GOLDMANN, KOLOVSKY and CARTON.
Mr. Thomas T. Warshaw argued the cause for appellant (Messrs. Drazin, Warshaw, Auerbach and Rudnick, attorneys).
Mr. Ralph W. Campbell argued the cause for respondent (Messrs. Campbell, Mangini, Foley, Lee & Murphy, attorneys; Mr. Michael J. Cernigliaro on the brief).
*256 The opinion of the court was delivered by CARTON, J.A.D.
Defendant Grillon appeals from a declaratory judgment determining plaintiff Allstate Insurance Company to be under no obligation to defend one George Bradley as an additional assured under its policy, or to pay any judgment obtained against him in a pending negligence action brought by Grillon in the Law Division.
Allstate had issued a liability policy to one Douglas as owner of the automobile which Bradley was operating with his permission on August 13, 1964. The automobile ran over a catch basin on the side of the highway, skidded some 200 feet and struck a parked car, which pinned Grillon against a diner situated about 70 feet off the roadway.
It is undisputed that the accident was reported to Allstate the next day. It is also conceded that during the two-week period following the accident Allstate completed its investigation as to liability, during the course of which the investigator obtained a four-page statement from Bradley and a copy of the police report. He also got in touch with the police officer mentioned in the latter report.
Allstate's investigator communicated with Grillon's wife the day after the accident and learned from her that her husband, who was a soldier, was at the Patterson General Hospital at Fort Monmouth. Although the investigator was unable to interview Grillon at that time because he was being operated on, the records of Grillon's hospitalization were available. Allstate's claim manager conceded that, although the investigator was able to determine the names of the persons treating Grillon from an examination of those records, no effort was made to interview any of those persons.
Grillon filed his Law Division action in February 1966 against Bradley and Douglas. Bradley alone was served in that action. No answer was filed by him or on his behalf. Grillon, not having entered a default judgment, served notice through his present attorneys, returnable November 3, 1967, upon Bradley and upon Allstate Insurance Company, Douglas' liability insurer, that he would apply for *257 leave to proceed and for an order allowing ten days to file answer to the complaint.
Thereupon, Allstate brought this action in the Chancery Division, claiming that the conditions of the policy were breached and it was thereby relieved of all liability. The Law Division action was stayed. After a trial in the Chancery Division, the trial judge, in upholding Allstate's contention, filed a written opinion detailing the factual background and the reasons for his determination. Allstate Ins. Co. v. Grillon, 101 N.J. Super. 322 (Ch. Div. 1968).
The trial judge found that Bradley was operating the vehicle with the owner's permission and was therefore an additional assured under the policy and that there was a breach of the policy condition requiring the summons and complaint to be forwarded immediately to Allstate. However, he held (and the parties agree) that the case was controlled by the principle enunciated in Cooper v. Government Employees Ins. Co., 51 N.J. 86, 94 (1968), that an insurer is not entitled to be relieved from liability for breach of a policy condition requiring notice unless it shows both a breach and a "likelihood of appreciable prejudice" to the insurer.
In Cooper Chief Justice Weintraub pointed out that although liability policy provisions requiring notice refer to conditions precedent, what is actually involved is a forfeiture. We observe that usually such notice provisions require notice of the occurrence of the accident, notice of claim for damages and notice of the bringing of an action thereon. The Chief Justice also stated:
"* * * This is not to belittle the need for notice of an accident, but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds. It would also disserve the public interest, for insurance is an instrument of a social policy that the victims of negligence be compensated. * * *
*258 The insurance contract not being a truly consensual arrangement and being available only on a take-it-or-leave-it basis, and the subject being in essence a matter of forfeiture, we think it appropriate to hold that the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice. The burden of persuasion is the carrier's." (at p. 94)
In applying the principle enunciated in Cooper to the evidence adduced at the trial at which only four witnesses testified, the trial judge rejected Allstate's first two contentions that it had sustained a "likelihood of appreciable prejudice" from Bradley's failure to forward to it the summons and complaint in a reasonable time after they had been served on him on March 21, 1966. These contentions were (1) that Allstate would have been able to keep informed of Bradley's whereabouts, and (2) it was possible the Law Division might deny additional discovery time if Allstate was required to defend the negligence action.
We agree that the evidence fully supported these findings.
Nevertheless, the trial judge upheld Allstate's alternative contention, that it had established the "likelihood of appreciable prejudice" because it was deprived of the opportunity of a reasonably early physical examination of Grillon, and, to a lesser degree, because it did not have timely opportunity to investigate and take Grillon's deposition and that of other available persons concerning Grillon's activities while he was receiving medical care and subsequent thereto.
In our view, the record does not support this conclusion and does not justify relieving the insurer of liability under the policy.
Allstate's claim of prejudice rests in large part on the thesis that notwithstanding the fact it received prompt notice of the accident and of Grillon's injury and was aware Grillon was making a claim for damages, had Bradley promptly forwarded to it the summons and complaint served on March 21, 1966, it could and would have compelled Grillon to submit to a physical examination within a short time thereafter. *259 Assuming such to be the case, the question remains whether, in view of the character of the injuries sustained by Grillon, the delay from March 1966 to the date in October 1967 when it learned that the suit had been filed, caused a likelihood of appreciable prejudice.
The record reveals not only that Allstate was aware that Grillon was taken to the Army hospital shortly after the accident, but also that it kept abreast of his physical condition by receiving copies of the Army medical records. On June 4, 1965 the Army issued its clinical record  a three-page, official document containing a comprehensive narrative summary of Grillon's treatment up to the time of his discharge from the medical holding detachment on April 28, 1965.
This record shows that Grillon sustained a compound comminuted fracture of the fibula and fibula of the right leg; that a cast was first applied to the injured leg, but that after the lapse of four months, when it became apparent that the bones were not uniting properly, it was necessary to perform a bone-grafting operation. In all, Grillon was compelled to undergo three separate operations. Postoperatively there were no complications. The record recites that the wound had healed satisfactorily and that Grillon was discharged from the medical holding detachment on April 28, 1965, fully ambulatory; that he had a slight limp and some residual atrophy in the calf and moderate joint stiffness, but no shortening in the leg.
It may well be that insurance carriers generally consider it to be important, in the defense of actions involving serious personal injury claims, to have their own doctors make a physical examination of the claimant within a reasonable time after the accident. However, it does not necessarily follow that, because it is a desirable company practice, it is, therefore, essential in every case. Nor does a delay in obtaining such an examination automatically demonstrate the existence of prejudice to the insurer in defending against such a claim.
*260 Each case must turn on its own circumstances. Here, plaintiff offered no evidence that it suffered any prejudice merely because a medical examination was not made by its physician soon after the suit was started.
As this brief summary of the Army's clinical records shows, plaintiff's injuries were primarily orthopedic in nature. The details were fully revealed by X-rays and records by an agency, whose accuracy of assessment and disinterest is hardly open to question. Since Grillon remained in the military service until at least April 28, 1965, the date of his discharge, as ambulatory, from the medical holding detachment company, it is apparent that any controversy as to the extent of his claim for damages will revolve principally around the extent of his permanent injury. Proof of the claim for hospital charges of some $4,151, as to which the United States Army appears to have given notice of a third-party liability lien claim, would seem to be fairly routine. Such a situation differs vastly from one where the injuries largely involve subjective complaints, and where intermittent examinations may be of importance in testing their veracity.
Moreover, there is nothing in the proofs to show that an examination of Grillon now would not reveal the extent of his permanent injuries as fully as they would have been revealed by an examination immediately after the suit was commenced.
Allstate makes the subsidiary argument that it has sustained prejudice as to Grillon's claim for temporary disability. It is suggested that a physical examination at this time may not aid greatly in fixing the duration of any such temporary disability. The argument is that the duration of any temporary disability may require investigation among Grillon's co-workers and supervisors, whether in the Army or in civilian life. It is also argued that a similar investigation among Grillon's acquaintances may be necessary with respect to his claim for loss of income.
*261 We note that the proofs in this case do not disclose whether, in fact, a claim is advanced for temporary disability or for loss of income, and the nature and extent of any such claims. Furthermore, the record is barren as to Grillon's activities since his discharge from the hospital, his employment, whether Army or civilian, the nature of his present complaints and the details of his claim for damages. At best, discussion of prejudice sustained by the carrier as to these elements of damages is grounded not on proof, but rather on speculation and surmise.
Furthermore, although more than six months elapsed between the date when Allstate filed this action and the trial thereof in May 1968, the insurer appears to have attempted no pretrial discovery in an effort to determine whether any investigation among Grillon's acquaintances as to these possible claims would have served any useful purpose. Nor does it appear that it made any attempt to ascertain whether relevant witnesses were still available. No proof at all was offered on this issue. We also note that Allstate specifically refrained, at the time of the pretrial conducted on April 3, 1968, from requesting a physical examination of Grillon, notwithstanding the fact that he was a party defendant in this action as well as plaintiff in the negligence action.
Under the circumstances, it can hardly be said that plaintiff has met the burden of persuasion imposed upon it of showing the "likelihood of appreciable prejudice" as to the temporary disability aspects of Grillon's claim. As in the case of the claim for permanent injury, plaintiff's claim of the likelihood of prejudice rests, as we have said, on mere speculation and surmise, and not upon proof which it had the burden of establishing.
Plaintiff's failure to carry the burden of persuasion on the issue of prejudice as to any element of damages makes it unnecessary to consider the interesting question whether a showing of prejudice in relation to only one aspect of that claim, e.g., temporary disabilities, would serve to bar recovery *262 for the whole of the claim, as opposed to only that specific element for which the requisite showing of prejudice has been established. Cf. Dziedzic v. St. John's Cleaners and Shirt Launderers, Inc., 53 N.J. 157 (1969).
Reversed.