ANNE C. LA PLACE, MARIE F. LA PLACE, Plaintiffs

v.

SUN INSURANCE OFFICE, LTD., JACKSON INSURANCE
AGENCY, INC.,

By: ANATH E. JACKSON and BIANCA C. JACKSON,
Agents, Defendants

Civil No. 123-1967

District Court of the Virgin Islands
Div. of St. Thomas and St. John

April 26, 1969

*See, also, 298 F.Supp. 764*

JAMES A. RICHARDS, JR., ESQ., *for plaintiffs*

BAILEY, WOOD & ROSENBERG, ESQS. (FREDERICK D. ROSENBERG, ESQ., of counsel), *for defendants*

STALEY, *Circuit Judge*
(Sitting by Designation)

MEMORANDUM

STALEY, *Circuit Judge*

On or about May 2, 1965, plaintiffs, Anne C. and Marie F. La Place, while walking on a highway on the island of St. Thomas, were struck by an automobile driven by Oswald R. Chinnery. Mr. Chinnery did not stop to assist the injured plaintiffs nor did he report the accident to the police. Within a few days of the accident the police notified Chinnery that they strongly suspected him of having hit the plaintiffs and that criminal proceedings were being instituted against him. He was found guilty by a jury on February 18, 1966, of unlawfully and wilfully leaving the scene of the accident.[1]

On March 14, 1966, plaintiffs brought personal injury actions against Chinnery, and after court trials on March 7, 1969, this court entered judgments in favor of plaintiffs against Chinnery totaling $15,000. This present action against Chinnery's insurance company, the Sun Insurance Office, Ltd. (hereinafter "Sun"),[2] is in the nature of garnishment whereby plaintiffs allege that they are entitled to

---

[1] Although Chinnery's criminal file was not introduced at trial, the court, in order to fully apprise itself of the background facts on public record, procured the court reporter's notes of Chinnery's criminal trial and his criminal file record (Criminal No. 43-1965). In order to save time and expense, the court only required the court reporter to read the notes of the criminal trial to the court. However, in case of an appeal, the court reporter's notes of Chinnery's criminal trial are available to be transcribed.

[2] Plaintiffs also joined as a defendant the Jackson Insurance Agency, Inc., the agency that sold Chinnery the policy.

311

the benefit of Sun's obligation to indemnify Chinnery, subject to the policy limits, for his legal liability to plaintiffs arising out of the accident.[3] Sun contends that it owes Chinnery nothing because he violated, among others, that condition of his policy which states:

"In the event of any occurrence which may give rise to a claim under this Policy the Insured shall as soon as possible give notice thereof to the Company with full particulars. Every letter claim writ summons and process shall be notified or forwarded to the Company immediately on receipt. Notice shall also be given to the Company immediately the Insured shall have knowledge of any impending prosecution inquest or fatal enquiry in connection with any such occurrence. In case of theft or other criminal act which may give rise to a claim under this Policy the Insured shall give immediate notice to the Police and cooperate with the Company in securing the conviction of the offender."[4]

All parties agree that Chinnery did not notify the company or its agent of the accident until late March or early April of 1966, when he was served with the civil suit papers. At that time, he went to his insurance agent, one Jackson, with the suit papers and told Jackson about the accident. He provided a formal written notice by a letter to Jackson on April 14, 1966, receipt of which was acknowledged by the agent in a return letter advising Chinnery that the company would deny him coverage under the policy on the grounds that he had failed to comply with its terms, especially that which required notice of any accident. On June 23, 1967, the insurance company entered into

---

[3] Although Sun did not deny that the policy in question was in effect when Chinnery's car struck plaintiffs, the period of coverage as represented by the policy and renewal slip introduced into evidence as plaintiff's exhibit No. 1, extends only from August 29, 1962, to August 29, 1964. As pointed out in the text, supra, the accident happened on or about May 2, 1965.

[4] Sun also relies upon the condition of the policy which provides:
"The due observance and fulfillment of the Terms of this Policy insofar as they relate to anything to be done or not to be done by the Insured and the truth of the statements and answers in the proposal shall be conditions precedent to any liability of the Company to make any payment under this Policy."

a waiver agreement with Chinnery in which it agreed to defend him in the personal injury actions while reserving its right to deny him coverage for the accident. Chinnery did not appear at the trials of the personal injury actions, and his liability was conceded by his counsel.

■ The court need not decide whether Sun can insist on written notice or whether it was sufficiently notified when Chinnery spoke to Jackson upon turning over the suit papers. However the notice was transmitted, there was a delay of ten months from the time of the accident until information of any kind was tendered to the insurer. Sun argues that this ten month delay is a violation of the policy such as will obviate its duty to make payment under it. Plaintiffs, on the other hand, argue that the notice was not untimely because Chinnery turned the suit papers over to his insurer as soon as he received them. The latter position is untenable. It equates notice of an accident with notice of a claim and seems to say that the absence of a formal claim by plaintiffs or their delay in filing suit excused Chinnery's failure to promptly report the accident to his insurer. The instant policy requires notice "as soon as possible," i.e., within a reasonable time, Home Indemnity Co. v. Ware, 285 F.2d 852 (C.A.3, 1960), "of any occurrence which might give rise to a claim." It is well settled that the last-quoted language refers not only to formal claims or suits but also to any accident or occurrence which might give rise to a claim. See Associated Metals & Minerals Corp. v. Dixon Chemical & Research, Inc., 82 N.J. Super. 281, 197 A.2d 569 (1963); 8 Appleman, Insurance Law and Practice § 4733 (1962). Furthermore, and just as importantly, the policy also requires prompt notice of knowledge of an "impending prosecution." Certainly, in the absence of a valid excuse it cannot be seriously contended that delivery of civil suit papers

ten months after the accident served as notice within a reasonable time of an impending criminal prosecution that Chinnery knew about within a week of the accident.

Plaintiffs next argue that a delay in reporting an accident will not by itself violate the policy in the absence of a showing by the company that it was harmed or prejudiced by the delay. Sun made no offer to prove such prejudice in the instant case. The various state jurisdictions are not in agreement as to whether such prejudice must be shown[5] or, if it is required, whether the insurer has the initial burden of demonstrating it.[6]

■ The states in our own Third Circuit disagree over what the law on this point should be;[7] since the case is one of the first impression in this jurisdiction, the court is free to adopt what it deems to be the better rule.

In the jurisdictions that hold prejudice or the lack of it to be immaterial if notice is in fact unreasonably untimely, the courts take a classic contractual approach to the problem. They view the question as being simply whether the insured fulfilled what the policy had denominated a

---

[5] A minority of jurisdictions hold that the insurer must be prejudiced by a delay in order to deny coverage on the basis of late notice. See e.g., Reed v. Pacific Indemnity Co., 101 Cal.App.2d 151, 225 P.2d 255 (1950); St. Paul & K.C.S.L.R. Co. v. United States Fidelity & Guaranty Co., 231 Mo.App. 613, 105 S.W.2d 14 (1937); Leach v. Farmers Auto Interinsurance Exchange, 70 Idaho 156, 213 P.2d 920 (1950); Parrish v. Phillips, 229 Wis. 439, 282 N.W. 551 (1938). The question of prejudice is often related to the question of reasonableness of the time within which notice was given, and differing fact situations have produced a myriad of differing results on this point. See generally, 18 A.L.R.2d 445 for a compilation of cases in this area.

[6] See 8 Appleman, Insurance Law and Practice § 4732 (1962) and cases cited therein.

[7] The court has been unable to find an authoritative Delaware case on point. The rule in Pennsylvania has long been that prejudice is immaterial if the delay in giving notice is unreasonable. Ross v. Mayflower Drug Stores, Inc., 338 Pa. 211, 12 A.2d 569 (1940). A recent Pennsylvania case held a delay of five months unreasonable as a matter of law. See Hachmeister, Inc. v. Employers Mutual Liability Ins. Co., 403 Pa. 430, 169 A.2d 769 (1961). The rule in New Jersey has recently been changed. In Cooper v. Govt. Employees Ins. Co., 51 N.J. 86, 237 A.2d 870 (1968), the New Jersey Supreme Court departed from a rule similar to Pennsylvania's and held that the insurer must show that a late notice of accident or loss created a likelihood of appreciable prejudice.

314

"condition precedent." If the insured has failed to fulfill the condition, no action can lie against the company regardless of whether or not it was prejudiced by the breach.

The trend in recent decisions, however, seems to be away from the classic contractual approach towards what this court thinks is a more realistic view of the problem. The terms of an insurance policy generally are not talked over or bargained for at arm's length; the insured is charged with the policy terms because he bought the policy, not necessarily because he read or understood its terms. It must also be pointed out that what is involved here is an attempt by the insurer to forfeit the insured's coverage. The court thinks it unreasonable to allow a carrier to deny its coverage even though its position was not substantially affected by the fact that it was not promptly notified of the accident or loss. This would not only be unfair to the insured, but would be against the public interest as well.

The New Jersey Supreme Court recognized this in Cooper v. Govt. Employees Ins. Co., 51 N.J. 86, 237 A.2d 870, 874 (1968), wherein the court stated:

> "The insurance contract not being a truly consensual arrangement and being available only on a take-it-or-leave-it basis, and the subject being in essence a matter of forfeiture, we think it appropriate to hold that the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice. The burden of persuasion is the carrier's."

This court believes that the Cooper decision is a step in the right direction. However, the court has difficulty with the concept of "a likelihood of appreciable prejudice." Cf. Allstate Ins. Co. v. Grillon, 101 N.J. Super. 322, 244 A.2d 322 (1968). It is submitted that such a concept requires too much speculation on the part of all concerned. The better and more concrete rule is that which

315

requires the insurer to prove by competent evidence not only that the insured breached one or more of the policy's provisions but also that the insurer was, as a consequence, actually and materially prejudiced.

Since the above is a new rule in this jurisdiction, and since Sun had no prior notice that it would be called upon to show how and why it was prejudiced by anything Chinnery did or failed to do, the court, in the interest of fairness, will grant defendants a new trial so that they may comply with the standard announced today.