AGNES H. LEUCKEL, Plaintiff

v.

FEDERAL INSURANCE COMPANY, Defendant

Civil No. 337-1966

District Court of the Virgin Islands

Div. of St. Thomas and St. John

September 16, 1969

BAILEY, WOOD AND ROSENBERG, ESQS. (FREDERICK D.
ROSENBERG, ESQ., of counsel), *for plaintiff*

ATTORNEY EDITH L. BORNN, *for defendant*

FRANCIS L. VAN DUSEN,* *Circuit Judge*

## SUR PLEADINGS AND PROOF

The plaintiff, Mrs. Agnes H. Leuckel, was injured in an automobile accident caused by Dr. G. Allen C. Webb. She was subsequently awarded a default judgment against him. She has brought this action against Dr. Webb's insurer, Federal Insurance Company, to recover this judgment.

The facts are undisputed and have been stipulated by counsel. On January 30, 1963, Dr. Webb, a resident of Canada, rented an automobile from Tropical Motors, Inc., a Virgin Islands corporation. Under the terms of the rental agreement, Federal Insurance Company (Federal) insured Dr. Webb against claims for personal injuries, provided he comply with the conditions of the master insurance policy between Tropical Motors and Federal.[1] On February

---

* Sitting as a District Judge by designation.

[1] Paragraph 3 of the Rental Agreement contained these terms:
"3. Renter being one of the assured under an insurance policy covering vehicle agrees to comply with all the terms and conditions of said policy, which by reference are incorporated herein and made a part hereof, and to comply with the terms and conditions appearing below. A copy of said insurance policy is available for inspection at the general offices of Operator upon request by Renter, or his duly authorized agent."

3, 1963, Mrs. Leuckel, an invited guest in the vehicle, was injured when Dr. Webb negligently drove it into a wall.

The president of Tropical Motors, Carl Tranum, discovered the wrecked car on February 4 and immediately contacted Sherwood Heyliger, the manager of Tropical Motors' rental division. Mr. Heyliger investigated the accident and attempted to contact Dr. Webb at his hotel. Despite repeated efforts that day and the next, Dr. Webb could not be located. On February 5, Dr. Webb left the Virgin Islands without having talked to Tropical Motors and without filing an accident report with the local police. A complaint against him, for failure to report an accident and for negligent driving, was issued by the police on February 4, to be served upon his return to the Islands.

Mr. Tranum wrote Dr. Webb in Canada the day after the accident had been discovered, stating that Dr. Webb had wrecked the car and demanding $745.75 to cover repairs. A copy of this letter was sent to Federal's resident agent for the Virgin Islands. However, neither Federal nor Tropical Motors had any knowledge that there was a passenger in assured's vehicle at the time of the accident until receipt of a letter of May 17, 1963, from plaintiff's attorney, which letter is described below.

No further action was taken until Mrs. Leuckel's attorneys contacted Tropical Motors on May 17, 1963, suggesting a possible settlement of plaintiff's "claim for personal injuries." On June 10, Federal wrote Dr. Webb demanding a "full and detailed report of the circumstances of this accident, reserving our principal's rights regarding coverage, for breach of policy conditions." Dr. Webb's

---

The Federal policy (page 1) contained this language:
"1. DEFINITION OF INSURED. Subject otherwise to the provisions of the Definition of Insured agreement of the policy
    (a) the insurance with respect to any driverless car applies only to the named insured and rentee . . . ."

Canadian attorneys replied on July 3, asserting that Dr. Webb had in fact filed an accident report with the Virgin Islands police and also giving a brief explanation of the accident:

"Our instructions are that the accident occurred because Mrs. Lueckel for some reason unknown to Dr. Webb grabbed his arms while he was operating the motor vehicle and caused the vehicle to go out of control. Consequently, Dr. Webb will be asserting in any action which is commenced against him that Mrs. Lueckel was the author of her own misfortune."

Less than two weeks later, on July 15, Federal wrote to Dr. Webb's attorneys informing them that Dr. Webb was not covered under the insurance policy:

"There is no coverage under this policy for your client, Doctor Webb, because of the violations of the coverage in his policy. There was no actual notice given on the part of Webb. He has failed to cooperate with us in the handling of the claim being made against him and against our insured.

"We therefore decline to grant the doctor coverage under the policy."

Over seven months later, on February 26, 1964, Mrs. Leuckel filed suit against Dr. Webb and Tropical Motors (Civil No. 72-1964). In its answer, presumably based on Dr. Webb's reply of July 3, Tropical Motors alleged that Mrs. Leuckel was the proximate cause of the accident. In addition, it moved for dismissal on the basis that Dr. Webb was not its agent; this motion was granted on July 6, 1965. Although Federal's attorneys represented Tropical Motors and although Federal was obligated under the insurance policy to defend Dr. Webb, had he complied with the conditions of the policy, Federal adhered to its position that Dr. Webb had forfeited his coverage by refusing to enter an appearance for him.

Dr. Webb filed no answer and made no appearance. Default judgment for $16,491.54, with interest thereon of six per cent., together with attorney's fees of $1500., was

awarded to Mrs. Leuckel against Dr. Webb on May 16, 1966.

The present action against Federal to enforce this judgment was commenced on October 21, 1966.

It is not disputed that Dr. Webb was insured by Federal at the time of the accident. Federal argues, however, that Dr. Webb subsequently forfeited his coverage because he violated the conditions of the policy. Under the rental agreement with Tropical Motors, Dr. Webb agreed "to comply with all the terms and conditions" of the master policy between Federal and Tropical Motors. Two of these conditions were that he notify the company "as soon as practicable" of the circumstances of any accident[2] and that he cooperate, at the company's request, with its handling of litigation arising out of the accident.[3] On the basis of these two conditions, Federal denied coverage to Dr. Webb before suit was instituted and asserts now that this denial is effective to bar the plaintiff from recovering her judgment against Dr. Webb from it.[4]

■ The rule applicable in the Virgin Islands to cancellation of insurance coverage was recently announced in La-Place v. Sun Insurance Office, Ltd., 7 V.I. 310, 298 F.Supp. 764 (D.V.I. 1969). In that case, the first notice received by the insurance company was some ten months after the acci-

---

[2] Condition 1 of the contract provided:
"When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

[3] Condition 18 of the contract provided:
"The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits . . . ."

[4] Condition 7 of the contract provided:
"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, . . . ."

dent's occurrence, when the insured was served with a complaint. The company denied the insurance coverage on the basis of his failing to give it timely notice, with full particulars, "of any occurrence which may give rise to a claim under this policy." The insured did not appear at trial, and the company, representing him with reservation of its right to deny coverage, admitted his negligence. In a suit to enforce the judgment against the company, the court held that the violation of the condition would not bar the plaintiff from recovering unless the insurance company could prove that it had been "actually and materially prejudiced" by the insured's failure to meet the condition.

"The terms of an insurance policy generally are not talked over or bargained for at arm's length; the insured is charged with the policy terms because he bought the policy, not necessarily because he read or understood its terms.[5] It must also be pointed out that what is involved here is an attempt by the insurer to forfeit the insured's coverage. The court thinks it unreasonable to allow a carrier to deny its coverage even though its position was not substantially affected by the fact that it was not promptly notified of the accident or loss. This would not only be unfair to the insured, but would be against the public interest as well.

\*       \*       \*

". . . The better and more concrete rule is that which requires the insurer to prove by competent evidence not only that the insured breached one or more of the policy's provisions but also that the insurer was, as a consequence, actually and materially prejudiced."

Id. at 767. The court granted the insurer a new trial to allow it an opportunity to meet this new rule.

In the present case, the facts do not show prejudice from failure of Dr. Webb to give notice of the accident

---

[5] Apparently, Dr. Webb never saw the insurance contract. Under the rental agreement with Tropical Motors he had the right to inspect the contract upon request, but there is no evidence that he ever availed himself of this opportunity or, indeed, ever read the contractual provision giving him this right.

600

"as soon as practicable." Federal was effectively notified of the accident by a letter from Tropical Motors on February 5, 1963, a mere two days after the accident. Although Federal did not learn of any injuries to plaintiff until some four months later,[6] there has been no showing that this prejudiced its defense of the prospective action.

█ Also, the record is not sufficient to prove a failure of Dr. Webb to cooperate which "actually and materially prejudiced" Federal. In response to its request for information, Dr. Webb's attorneys replied with a brief factual explanation; on the basis of this reply, Federal later raised the affirmative defense of contributory negligence. If Federal needed more information, it had the right under the contract to demand it; if at that time Dr. Webb failed to provide further answers, there might be some question of prejudice. But instead of requesting further assistance, Federal told Dr. Webb that it was denying him coverage. It made no further attempt to get information, affidavits or deposition and, despite its contractual obligation to defend him, it did not even suggest defending him with reservation of its right to deny him coverage.

Unlike the defendant in LaPlace, the defendant in this case had constructive notice of the new rule of Virgin Islands law before filing the stipulation of facts. The LaPlace decision was announced on April 26, 1969; the stipulation of facts, containing no allegation of prejudice to Federal, was submitted to this court in final form on July 2, 1969. On the basis of these facts, I find that there was no actual and material prejudice to Federal because of any violations of the policy conditions by Dr. Webb.

Judgment is granted to the plaintiff in the sum of $16,491.54, with interest thereon at the rate of six per

---

[6] Mr. Heliger, upon inspecting the wrecked vehicle on the day after the accident, found blood on the front seat, but, apparently, had no way of knowing the identity of the injured person. There is no evidence, however, that this information was communicated to Federal.

cent. per annum since May 16, 1966, together with attorney's fees of $1500. and costs of this suit, including a fee for plaintiff's attorneys in this action of $500.00.