## IN RE: TUTU WATER WELLS CONTAMINATION LITIGATION, THIS DOCUMENT RELATES TO TEXACO, INC. AND TEXACO CARIBBEAN, INC. ("TEXACO"), SUCCESSOR TO VERNON MORGAN

Master Docket File No. 1989-107

Civil No. 1996-54(B)

District Court for the District of the Virgin Islands

Division of St. Croix

December 15, 1998

ADDISON J. MEYERS, ESQ., O'Connor & Meyers, P.A., *Counsel for Third-Party Plaintiffs,* Coral Gables, FL.

CHARLES J. CURRAN, ESQ., *Co-Counsel for Third-Party Plaintiffs,* Tallahassee, FL.

TRESTON E. MOORE, ESQ., *Co-Counsel for Third-Party Plaintiffs,* St. Thomas, U.S. Virgin Islands.

KIMBERLY BOLDT, ESQ., Russo, Wells & Associates, P.A., *Co-Counsel for Third-Party Plaintiffs,* Miami, FL.

295

WILFREDO A. GEIGEL, ESQ., *for General Accident Co. of Puerto Rico, LTD.*, Christiansted, St. Croix, U.S. Virgin Islands.

DENISE FRANCOIS, ESQ., Hodge & Francois, *Counsel for CIGNA Corporation, Fireman's Fund Insurance Company, as a former member of AFIA, AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*, St. Thomas, VI.

HARRY P. COHEN, ESQ., Rosenman & Colin, LLP, *Counsel for CIGNA Corporation, Fireman's Fund Insurance Company, as a former member of AFIA, AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*, New York, NY.

ROBERT REEDER, ESQ., Cozen & O'Connor, *Counsel for CIGNA Corporation, Fireman's Fund Insurance Company, as a former member of AFIA, AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*, Philadelphia, PA.

BROTMAN, *District Judge (Sitting by Designation)*:

## I. INTRODUCTION AND BACKGROUND[1]

This case arises out of an insurance coverage dispute between Third-Party Plaintiffs Texaco Inc. and Texaco Caribbean, Inc., (collectively hereinafter "Texaco") as the Successor to Vernon Morgan ("Morgan"), and several purported insurance carriers Morgan claims have breached contracts to insure Morgan and have refused, in bad faith, to defend and indemnify Morgan against numerous environmental actions. These actions resulted in part from Morgan's alleged negligence in allowing hazardous chemicals to be discharged from underground storage tanks at the Tutu Texaco Service Station ("Service Station") into the Turpentine Run Aquifer in St. Thomas, United States Virgin Islands.

---

[1] This is the third opinion in a set of three opinions. For a more complete discussion of the background of this case, please refer to the *In Re: Tutu Water Wells Contamination*, Opinion on Motions To Dismiss, dated December 15, 1998.

Beginning in 1972, Texaco leased property to Morgan from which Morgan operated the Service Station. In September 1976, Morgan discovered the loss of approximately 2,200 gallons of gasoline from a leaking pipe joint. In late 1977, Morgan discovered the loss of approximately 240 gallons of fuel due to a leak in a fuel delivery line. After both discoveries, Morgan apprised Texaco of the situation. On two occasions during the 1980's, one of three unlined underground storage tanks on the site were taken out of service due to a suspected leak.

In 1989, various claimants instituted litigation against Texaco and Morgan for damage caused by the aforementioned discharges of hazardous substances from storage tanks and fuel delivery system located at the Site. *See* ¶¶ 17-20 to Texaco's First Amended Third-Party Complaint, annexed to the Affidavit of Paul Leodori as Exhibit A ("Texaco's Complaint").

In December 1990 Texaco settled the matter entitled *Total Vision, Inc. d/b/a Tutu Water Co., et al v. Morgan, et al.,* (Case No. 1989-107) (*"Total Vision"*) for $700,000. *See* ¶ 36 to Texaco's Complaint. In March 1992 Texaco settled the matter entitled *Four Winds Plaza Partnership v. Morgan, et al.* (Case No. 1989-220) (*"Four Winds"*) for $2,250,000. *See* ¶ 37 to Texaco's Complaint. On or about February 1994, Texaco settled the matter *Harthman et al. v. Morgan, et al.* (Case No. 1989-220) for $1,000,000 ("Harthman"). All three settlements included the release of all claims against Morgan. *See* Texaco Complaint at ¶38.

Morgan was represented by John Zebedee, Esq. in *Total Vision, Four Winds,* and *Harthman.* Texaco paid John Zebedee, Esq. to represent Morgan in these matters. *See* Letter from John Zebedee to Michael Frantz dated August 14, 1991 attached as Exhibit N to Leodori Aff.)

On December 7, 1995, Morgan filed a Third-Party Complaint against CIGNA, General Accident Insurance Co. Puerto Rico Ltd. and various other insurers claiming bad faith and seeking defense costs and indemnity for alleged policies issued by the insurers to Morgan, respecting alleged contamination arising from the leaking underground storage tanks and fuel delivery system at the Site. On March 2, 1998, this Court found that Texaco, not Morgan, was the real party in interest as "successor" to Morgan. (*See* ORDER ON

MOTIONS FOR SUMMARY JUDGMENT entered on March 2, 1998 annexed to the Affidavit of Paul Leodori as Exhibit L) (*See* OPINION ON MOTIONS FOR SUMMARY JUDGMENT dated March 2, 1998 annexed to the Affidavit of Paul Leodori as Exhibit M).

In Texaco's first-amended third-party complaint, filed April 3, 1998, Texaco claims include "bad faith" and "failure to defend and indemnify" against several insurance companies with which Vernon Morgan ("Morgan") had contracted: Fireman's Fund Insurance Company, AFIA Worldwide Insurance, CIGNA Corporation, CIGNA International Corporation, Insurance Company of North America, and General Accident Insurance Co. Puerto Rico, Ltd. ("General Accident"). Texaco as successor to Vernon Morgan seeks insurance coverage and payment of its underlying disputes against Morgan as reflected in its judgment of $16,682,392.

The disputed General Accident policy was purchased in December 1985 from West Indies Insurance Agency, which identified General Accident as the insurer. *See* Plaintiff's Statement of Material Facts Not at Issue ("Plaintiff's Statement") Attached as Exhibit A. The policy provided insurance for "all sums which the insured shall become legally obligated to pay as damages. . ." *See* Plaintiff's Statement Attached as Exhibit B. The policy defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in . . . property damage neither expected nor intended from the standpoint of the insured." *See* Plaintiff's Statement Attached as Exhibit C.

Texaco now seeks partial summary judgment against General Accident based upon General Accident alleged Duty to Defend Morgan.[2]

## II. DISCUSSION

### 1. STANDARD FOR SUMMARY JUDGMENT

■ The standard for granting summary judgment is a stringent but surmountable one. That is, summary judgment is appropriate

---

[2]General Accident has not brought forth a Notice of Motion, and therefore any requests on behalf of General Accident to dismiss Texaco's claim will not be considered by the Court in this Opinion.

only when the materials of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n.2 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence in favor of the non-moving party. *Serbin*, 96 F.3d at 69 n.2. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

Supreme Court decisions mandate that a motion for summary judgment must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the non-moving party.'" *Lawrence v. National Westminster Bank of New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). Instead, the non-moving party must "by affidavits or by depositions and admissions on file 'mak[e] a showing sufficient to establish [that a genuine issue of material fact exists as to each] element essential to that party's case.'" *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir. 1991) (declaring that a non-movant may not "rest upon mere allegations, general denials, or . . . vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

## 2. INSURANCE POLICIES

In *Buntin v. Continental Insurance Co.*, 525 F. Supp. 1077, 1080 (D.C.V.I. 1981), this Court recognized that "most insurance policies expressly obligate the insurer to assume the defense of lawsuits arising under the policy." Specifically, the duty to defend "comes into play when a claim is made against an insured which may

potentially be covered by the policy." *Hess Oil Virgin Islands Corp. v. Firemen's Fund Insurance Company, et al.*, 626 F. Supp. 882 (D.V.I. 1986). In determining whether a duty to defend exists, "the factual allegations of [the] complaint . . . are controlling." *Enron Corporation v. Lawyers Title Insurance Corporation, et al.*, 940 F.2d 307 (8th Cir. 1991), *citing C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 483 (3d Cir. 1981) (quotation omitted; emphasis in original).

■ Interpretation of insurance contracts is governed by the Virgin Islands Insurance Code, 22 V.I.C. §§ 1-1698, which provides:

> Every insurance contract shall be construed according to the entirety of the terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement, or application attached to and made a part hereof.

22 V.I.C. § 846. Furthermore, in interpreting an insurance policy, Virgin Island courts should read insurance policy provisions within the context of the entire policy, avoiding ambiguities whenever possible. *Coakley Bay Condominium Association*, 26 V.I. 348, 770 F. Supp. 1046, 1051 (D.V.I. 1991).

Finally, the Insurance Code states:

> when the name of the person intended to be insured is specified in the policy, such insurance can be applied only to his own proper interest.

22 V.I.C. 805.

## 3. DUTY TO DEFEND

Texaco argues that the General Accident policies during the relevant years provided Morgan with a promise to "defend any suit against any suit seeking damages on account of property damage caused by an occurrence arising out of his garage operations." Plaintiff's Motion for Partial Summary Judgment on the Duty to Defend as to Defendant General Accident and Memorandum of Law ("Plaintiff's Motion") at 5. Therefore, Texaco contends

that, as a matter of law, the claims brought by *Total Vision, Four Winds,* and *Harthman* against Morgan, concerning his operations of the garage, fall within the duty to defend provided by General Accident. *Id.*

General Accident argues, in response to Texaco's motion, that Morgan was not listed as the insured. Instead, Tutu Texaco Service Station, Inc ("Tutu Texaco") was listed, and nowhere was Morgan shown to be insured under the policy. *See* Opposition to Motion for Partial Summary Judgment ("Opposition Memo.") at 3. This contention is without merit. The policy clearly states:

Each of the following is an Insured under this insurance to the extent set forth below:

A. Under the Garage Bodily Injury and Property Damage Liability Coverages:

. . . . . . . .

(2) with respect to garage operations other than the automobile hazard: (a) any employee, director or stockholder of the named insured while acting within the scope of his duties as such:

. . . . . . . .

(d) any person . . . having a financial interest in the garage operations of the named insured.

In his affidavit, Nestor Yulfo, the Claim Manager for General Accident Insurance Company, admits that Morgan is an employee and stockholder of Tutu Texaco. *See* 1998 Aff. Yulfo at ¶4. Therefore, no question exists as to Morgan's insured status.

Furthermore, General Accident contends that even assuming that there was an intention on the part of the corporation insured to assign its rights under the insurance policy, "it did not comply with the requirements of the general conditions of the policy which . . . required that 'assignment of interest under the policy shall not bind the company until its consent is endorsed hereon.'" *Id.* Despite this contention, Morgan was a person insured under the policy, so no assignment had to take place.

Next, General Accident argues that Morgan did not comply with condition 9 in "CONDITIONS APPLICABLE TO SECTION 1," which required Morgan to take a number of specific actions.

Opposition Memo at 5. Texaco argues that condition 9 is not applicable under the instant facts. The instructions in condition 9 discuss the protocol for reporting a notification of loss. Here, Vernon Morgan was not making an insurance claim for damage to his own real or personal property; instead Morgan had been sued by third parties who claimed that Morgan had negligently damaged their property. Despite both sides contentions, a genuine issue remains as to the definition of "loss." A jury must determine if loss refers to only Morgan's property loss or any loss that affects Morgan.

Third, General Accident states that it has no obligation to defend Morgan since it never received appropriate notice of the suit nor proof of loss regarding the underlying complaints. Opposition Memo. at 5. Condition number 4, applicable to Section 2 of the policy states that "[i]f claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative. . ."

Violation of the condition of notifying an insurance company in a timely manner "would not bar the plaintiff from recovering unless the insurance company could prove that it had been 'actually and materially prejudiced' by the insured's failure to meet the condition." *Leuckel v. Federal Insurance Company*, 303 F. Supp. 407, 7 V.I. 595, 600 (D.V.I. 1969), *citing LaPlace v. Sun Insurance Office, Ltd.*, 7 V.I. 310, 298 F. Supp. 764 (D.V.I. 1969). General Accident has not alleged any prejudice on account of Morgan's alleged violation.

Furthermore, notwithstanding General Accident's arguments, an issue of fact still exists as to whether or not General Accident actually received notice of the claims against Morgan. General Accident claims that it received no such notice. Texaco, however, argues that General Accident did have notice. For example, Texaco submits a letter dated March 30, 1990 from the West Indies Insurance Agency, Inc., as well as the deposition of Gloria Kane, a representative from West Indies Insurance Agency, Inc., to demonstrate that General Accident had actual notice of the lawsuits against Vernon Morgan. Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment on the Duty to Defend as to Defendant General Accident ("Plaintiff's Reply") at 5.

■ According to the General Accident policy, a condition of the applicability of General Accident's responsibility to the insured relies upon the insured's notifying General Accident of the claim and following certain protocols. An issue of fact still exists as to whether or not the appropriate protocol was followed and notice given. Because issues of fact remain this Court cannot find as a matter of law that General Accident had a duty to defend Texaco. As such, Texaco's motion must be denied.

## III. CONCLUSION

For the above stated reasons, Texaco's Motion for Summary Judgment is denied.

Dated: December 15, 1998.